## CONTINENTAL CASUALTY CO. v. GOODNATURE et al.

No. 25535.    Feb. 5, 1935.

Pierce, Follens & Rucker and A. M. Covington, for petitioner.

Armstrong & Murphy and Nelson Rosen, for respondents.

PHELPS, J. The Continental Casualty Company issued its universal standard workmen's compensation and employees liability policy covering the employees of Gorton Engineering Company. Jack Goodnature, an employee of the Gorton Engineering Company, sustained an accidental personal injury in the course of his employment for which he filed claim with the State Industrial Commission. Upon hearing, he was awarded compensation. There was no dis-pute as to his injury or his right to compensation from his employer, but the Continental Casualty Company files this action to review the award in so far as the same applies to it as the insurance carrier of Gorton Engineering Company, and the controversy here is between the insured and insurance carrier. It is the contention of the Gorton Engineering Company that the Continental Casualty Company was the insurance carrier covering all of the operations and business of the Gorton Engineering Company, while the Continental Casualty Company contends that under its policy issued to the Gorton Engineering Company it did not agree to assume the liability under the Workmen's Compensation Law in the business operations such as were engaged in by the Gorton Engineering Company at the time the accident happened, and that it should be relieved of the obligation to pay the award under the finding and award of the Industrial Commission.

It appears that the employee received his injuries while his employer was engaged in the erection of a "gas lift" station in the Oklahoma City oil field, and it is the contention of the insurance carrier that the installation of the machinery and equipment for this purpose constituted what is known as "millwright" work and that this classification or character of work was not within the contemplation of the insured and insurance carrier at the time the policy was issued and, therefore, that this employee was not covered by this policy while engaged in that character of work. The record contains a copy of the policy embracing the various classifications covered by the policy, among which are carpentry, iron or steel erection (not otherwise classified), fence construction, machinery, and "Welding and Cutting—axy-acetylene— shop and outside work— including machining operations connected therewith (no pay roll division). (3364)"

Counsel for the insurance carrier favor us with exhaustive and well prepared briefs to support their contention. In these briefs they cite numerous authorities from the various states and include decisions of this court. A careful examination of these authorities convinces us, however, that the authorities cited therein are not entirely applicable to the facts in the instant case. For example, they cite New Amsterdam Casualty Co. v. State Industrial Commission, 80 Okla. 7, 193 P. 974, in which the casualty company issued its policy to J. H. Townsend Company, whose business was listed as that of a wholesale hat and millinery store. A

workman was injured while repairing the plastering in the building in which said company was doing business, and this court held that the policy covering the operation of a "wholesale hat and millinery store" did not cover the insured workman.

They also cite Fidelity & Casualty Co. v. Baker, 162 Okla. 10, 18 P. (2d) 894, wherein the policy was issued covering C. H. Sweet, trustee for the Tedray Oil Company, operating a lease near Kellyville, Okla. An employee was injured while working with a drilling machine on a lease near Skiatook, Okla., with which it appears that the trustee had nothing to do, and this court held that the employee of the Tedray Oil Company when injured while drilling on a lease near Skiatook was not covered by the policy issued to the trustee operating a lease near Kellyville.

They also cite U. S. Fidelity & Guaranty Co. v. Bullard Gin & Mining Co. (Tex. Civ. App.) 245 S. W. 720, wherein the insured was engaged in cotton ginning and pressing. There was a clause in the policy providing that "this policy shall cover all employees of the employer." It appears that this company also operated a box factor in a separate building, and the court held that where a company was engaged in "two separate and distinct kinds of business," the policy covered only the one designated therein. To the same effect is the holding of the various courts in the numerous cases cited by counsel for the insurance carrier in this case. These authorities, no doubt, state clearly the well-known and generally accepted principles of law applicable to the facts in each particular case, but in the instant case the record reflects a state of facts which make them inapplicable here. In the instant case there is a dispute between the parties as to what particular industries or lines of work are covered by the policy, in which the Industrial Commission evidently felt that there was some ambiguity on the face of it, and to clarify this ambiguity it permitted the introduction of parol testimony as to the intention of the insured and insurance carrier and followed the well-known and well-settled principles of law as applied to ambiguous contracts. No doubt the Industrial Commissioners permitted the introduction of this testimony, not to alter or vary its terms, but to explain the ambiguity..

In erecting this "gas lift" station it appears that the insured removed from a distant point three heavy units of machinery to the point where the station was to be erected. The ground had been graded and heavy timbers bolted together to form the foundation for these machines. These machines were to be connected to pipes leading to an oil or gas well. Over all a steel building was erected. The machinery had been moved and put in place about 20 days prior to the accident. The pipes were welded and then laid in open trenches and connected with the engines, and in order to test the lines and connections high gas pressure was applied for the purpose of ascertaining whether there were any leaks in the pipes or connections of the various units constituting the station, and in making this test an explosion occurred resulting in the injury complained of.

The insurance carrier contends that the work of installing this machinery constituted "millwright" work and was not permitted by the terms of the policy. The insured claims that the provisions of the policy permitted this character of work, and particularly the welding of the pipes, that part of the work which was being tested at the time the accident occurred. There is some intimation on the part of the insurance carrier that it understood that the insured was engaged exclusively in constructing residences, but this contention is not borne out by the record.

The record shows that the agent for the insurance company soliciting this insurance was told that they wanted "full coverage" and that the agent told the insured that their policy would give them "full coverage," and it was the understanding of the parties that the agent for the insurance company was thoroughly familiar with the business in which the insured was engaged and that it was the intention of the insured and insurer, and it was the understanding between them, that the policy should afford them "full coverage" on their operations.

It further appears that for several years preceding the accident the insured had been engaged in work of the same general character as that being done at the time of the accident and that prior to this time the insured had been carrying full coverage under the Workmen's Compensation Law in a different company. Then, since the policy on its face does not specifically exclude the kind and character of work being done at the time the accident occurred, it is pertinent to inquire, What was the intention of the parties to this contract at the time the policy was issued?

It appears from the record that the agent of the insurance company was familiar with the operations of the insured; that the agent

of the insured told the agent of the insurance company that they wanted "full coverage," and the agent of the insurance company told him that the policy his company would write would give them "full coverage."

It, therefore, appears that there was no disagreement between the parties at the time the policy was written as to what was covered by it. In U. S. Fidelity & Guaranty Co. v. Town of Comanche, 114 Okla. 237, 246 P. 238, this court held that if the intention of the parties is not clearly ascertainable from the instrument itself, the circumstances under which the contract was made should be taken into consideration and the contract should be so interpreted as to give effect to the mutual intentions of the parties.

The same thing was held in Barricklow v. Boice, 50 Okla. 260, 150 P. 1094; D'Yarmett v. School District, 72 Okla. 124, 179 P. 20. In Maryland Casualty Co. v. Whitt, 167 Okla. 261, 29 P. (2d) 65, this court held:

"When a policy of insurance is susceptible of a construction placed thereon by the parties thereto, such construction should ordinarily be adopted by the courts as controlling."

If there is ambiguity in the contract or if its terms are not plain and unmistakable, it will be construed most strongly against the insurance company. It will be remembered that the policy was prepared by the insurance company and presumably the provisions the insurance company wanted embodied in the policy were placed there. Section 9478, O. S. 1931, states:

"* * * The language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party."

To this same effect was the holding of this court in Prowant v. Sealy, 77 Okla. 244, 187 P. 235; Kershaw v. Reynolds, 124 Okla. 174, 254 P. 713; Friend v. Southern States Life Ins. Co., 80 Okla. 76, 194 P. 204.

In Employers' Casualty Co. v. T. E. Wiggins, 168 Okla. 295, 310, 32 P. (2d) 886, this court said:

"If there be any ambiguity of the contract of insurance in this respect, then the doubt must be resolved in favor of the insured." (Also quoting from 32 C. J. 1152.)

Clause C of the policy reads as follows:

"The company shall be permitted, at all reasonable times during the policy period, to inspect the plants, works, machinery and appliances covered by this policy. * * *"

The insurance company's agent knew what business the insured was engaged in and some 30 days or more prior to the expiration of a policy the insured carried in another company, this agent was soliciting the business and had plenty of time to thoroughly familiarize himself with the character of the business done by the insured.

Under the above-quoted section of the policy the insurance company had the privilege of inspecting the plants and works of the insured and, therefore, had ample opportunity to protect itself by either placing a prohibitive clause in the policy or canceling the policy, but it made no complaint until after the accident occurred. The Industrial Commission found:

"That on November 9, 1933, at the time of the accidental personal injury to the claimant, the respondent, Gorton Engineering Company, had a compensation insurance policy, with the insurance carrier, Continental Casualty Company, which said insurance policy covered the respondent, and the claimant in the occupation in which the claimant was working at the time of the said accidental personal injury."

We think the Industrial Commission reached the right conclusion, and the award is affirmed.

McNEILL, C. J., and RILEY, BUSBY, and GIBSON, JJ., concur.