MORAL INSURANCE CO. v. STEVES.

No. 35451.   May 26, 1953.

*257 P. 2d 836.*

Foster, Wilson & Bowen, Oklahoma City, and J. G. Follens, Tulsa, for plaintiff in error.

Butler, Rinehart & Morrison, Oklahoma City, for defendant in error.

BLACKBIRD, J. On November 28, 1950, Herbert B. Steves recovered judgment in the court of common pleas, in the sum of $1,426.88 and costs, against Val Bryon Wells. Said judgment debtor's liability apparently arose out of an automobile accident which occurred August 6, 1950. After an execution had been issued to satisfy said judgment and the same was returned: "No property found," garnishment proceedings were instituted in said cause against Moral Insurance Company, as garnishee. After obtaining issuance of a garnishment order upon filing one affidavit, another affidavit for garnishment after judgment was filed on behalf of the judgment creditor, Steves, in which it was alleged that the affiant verily believed that said insurance corporation *is indebted* to the judgment debtor or has in its possession or under its control property belonging to said debtor which is not exempt from seizure or sale upon execution. Attached to this affidavit were interrogatories which were served upon said garnishee and which, after being so directed by court order, the garnishee answered. The pleading it filed in so answering contained no more than the interrogatories and its answers thereto, in words and figures as follows:

"1. Did you, prior to the 6th day of August, 1950, issue to Val Bryon Wells a policy of public liability and property damage insurance wherein the said Val Bryon Wells was the named insured.

"Answer: Yes.

"2. If your answer to Interrogatory number 1 is in the affirmative, state the limits of liability shown in said policy.

"Answer: 5000/10000 B1————5000 P D

"3. Was said policy of liability and property damage insurance in force and effect on the 6th day of August, 1950?

"Answer: No.

"4. If your answer to Interrogatory 3 is in the negative, please give the expiration date or cancellation date of said policy.

"Answer: July 20, 1950.

"5. If said policy of insurance referred to in the above interrogatories was cancelled by written notice, attach hereto photostatic copy of such notice, and describe the manner and method of serving such notice on the said Val Bryon Wells.

"Answer: Notice sent to Val B. Wells by United States mail.

"6. If the policy of insurance referred to above has heretofore been cancelled, please give reason for cancellation.

"Answer: Prior accidents.

"7. If the policy of insurance referred to above was issued, attach photostatic copy of original policy or copy thereof.

"Answer: Attached."

After the filing of the above instrument Steves, the judgment creditor, served notice upon said garnishee that he took issue with its answers to interrogatories 3, 4, 5, 6, and 7, and, without any further pleadings, a trial was had without a jury. At the close of the trial, the court entered judgment in favor of Steves, finding that the insurance policy issued to Wells by the garnishee as disclosed in its answers to the 1st, 2nd and 7th interrogatories, was in force and effect on the date of the accident (contrary to the said garnishee's answers to the 3rd, 4th, 5th and 6th interrogatories), and entered a money judgment for Steves and against said garnishee in the same amount as the judgment he had previously obtained in the same court against Wells.

Wells, the insured, was not a party to the garnishment proceedings and appeared therein only as a witness for Steves.

The garnishee, Moral Insurance Company, will hereinafter be referred to merely as "The Company" or the "Garnishee." In its appeal from said judgment, the Company takes the position that the trial court erred in its attempt, by said judgment, to compel enforcement of the policy. It is urged that said judgment, which found that Well's policy had not been canceled previous to the date of the accident, as represented in said company's answers to the 3rd, 4th, 5th and 6th interrogatories, is contrary to the evidence. We do not agree. In support of said company's contention, it points to evidence showing that as early as July 15, 1950, United Underwriters, its general agent, wrote a Mr. Hoffman of the Motor Securities, Inc., its local agent, to return Well's policy "for immediate cancellation and to notify the assured of such action," and that if the policy was not received by said writer within five days of the date of said letter, it would become "necessary for direct cancellation notice to be sent to the assured"; that thereafter, on July 20, 1950, Motor Securities, Inc., wrote Mr. Wells of their receipt of the letter "advising us that they are cancelling this insurance coverage, as of this date," and inviting him to stop in their office "* * * so that we can have a talk with you in regard to it. * * *" On the basis of this and Wells' admission that he went to see Hoffman about it, the company argues that Wells had actual notice of the cancellation of the policy several days before the accident. In their argument, counsel for the Company also infers that Wells must have surrendered the original policy because it appeared that he had in his possession only a copy of it and the evidence did not clearly show what disposition was made of the original, or of the refund of the unearned portion of the last premium Wells paid on the policy, which is customarily returned to the insured upon surrender or cancellation of the policy. Wells' testimony was not only to the effect that a copy of the policy was all he ever received and that no part of the unearned premium was returned to him, but that he went to see a Mr. Cotton, the insurance company's branch manager, before going to see Hoffman in June; that Cotton told him his policy was not canceled and that when he related this to Hoffman, the latter said no more about its being canceled. In our opinion, the trial court's finding that Wells' policy was in effect on the date of his accident with Steves is sufficiently supported by this evidence and the undisputed fact that the five days notice prescribed both in the policy itself and our statute (36 O.S. 1941 §14), was not mailed by the company until August 7, 1950, or one day after the accident.

The Company also contends that the trial court lacked power or jurisdiction to render a money judgment against it because the only issue joined by the Company's "Answer" or answers to Steves' interrogatories and his notice that he took issue therewith, was: Whether or not the policy that the company had issued to Wells was in force and effect on the date of the automobile accident? It is said that in going further than determining that the policy was in force, and purporting to determine, in addition thereto, the garnishee's liability under the policy, the court went beyond the issue joined by the only "pleadings" that had been filed and the only evidence presented, contrary to the plain wording of the provision of Title 12 O.S. 1941 §1177, stating that the judgment in such cases "shall be no bar beyond the facts stated in "the (garnishee's) answer"; and its judgment was invalid and erroneous to that extent; that in so doing, the court determined liability on an insurance contract in which the insurer's obligation to pay such a judgment for its insured was not fixed or unconditional, but was dependent upon the existence of various conditions and the insurer's compliance with a number of contractual provisions set forth in the policy;

that by rendering the judgment it did, the court deprived the Company of the opportunity of pleading or proving that such conditions precedent to its enforcement prescribed in the policy itself had not been met or occurred, and which would have precluded any attempted enforcement of the policy by the insured. In support of its position, the Company cites Security Bldg. & Loan Ass'n of Oklahoma City v. Ward, 174 Okla. 238, 50 P. 2d 651; Maxey & Co. v. Crowl, 171 Okla. 337, 41 P. 2d 254; Tucker v. Ware, 169 Okla. 401, 37 P. 2d 623; Jacobs v. Colcord, 136 Okla. 158, 275 P. 649; Bell-Wayland Co. v. Nixon, 57 Okla. 138, 156 P. 1195; House v. Scanlan, 34 Okla. 796, 127 P. 481; Davis v. Lilly, 17 Okla. 579, 87 P. 302, and London & Lancashire Indemnity Co. of America v. Courtney (C.C.A. Okla.) 106 Fed. 2d 277. These cases are cited as authority for the propositions that Steves, the judgment creditor, could acquire no greater rights against the garnishee insurance company than the insured and judgment debtor, Wells, possessed, or could enforce against it; that the liability of the garnishee to the debtor is never presumed but must be proved; and that a judgment, outside or beyond the issues of the case and upon a matter not submitted for determination, is a nullity. We find no fault with the rules laid down in these cases, but in none of them, nor in any other cases that have come to our attention, has the precise question involved here been decided. It is true, as recognized in the Security Bldg. & Loan Ass'n of Oklahoma City case, supra, that the liability of an insurance company to its insured can neither be created nor enlarged by the institution of garnishment proceedings. It is also true that the necessity of proof of the insurer's liability to the insured under the terms of the policy cannot be dispensed with by reason of the garnishment proceedings. However, in this case it is observed from the record that the insurance policy was introduced in evidence; and that in section 1 of the "Insuring Agreements" contained therein, the Company agrees "To pay on be-

half of the insured all sums which the insured shall become *legally obligated* to pay as damages * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile." We think that if the Company had had any defense or defenses against enforcement of the policy and its above-quoted contractual obligation thereunder, it should and would have attempted to prove it or them at the trial, and in the absence of such defense, the trial court's judgment was warranted. The last clause of section 1177, Title 12 O.S. 1941, supra, does not apply to the situation here. The garnishee's answer referred to in that section is the statutory affidavit of indebtedness denial formulated and set forth in section 1176, immediately preceding it. Section 1177, supra, states that such garnishee's affidavit shall be deemed the answer to the plaintiff's, or judgment creditor's affidavit, and that plaintiff may in all cases move the court, upon such answer of the garnishee, * * * for such judgment, as he shall be entitled to thereon, but any such judgment shall be no bar beyond the facts stated in such answer. The "Answer" filed by the garnishee here was the one contemplated in section 864 of Title 12, supra. While the judgment in the present case did go "beyond the facts stated" in the garnishee's answers to the judgment creditor's interrogatories, regarding the question of whether or not its policy was in force and effect on the date of the insured's or judgment debtor's accident, still, the garnishee's liability under the terms of the policy was put in issue by the judgment creditor's allegations in its affidavit for garnishment, as to said Company's indebtedness to the insured, and even though the Company did not join this issue by specifically denying such indebtedness or liability, in addition to answering the interrogatories, it was free to do so. Instead, however, it went to trial upon its denial that the policy was in force and effect, and the record reveals no attempt on its part to amend or supplement its answers to the interrogatories with any

broader or additional denial. We think, by such failure, the Company waived any right it may otherwise have had to now complain that the judgment went further than determining the single issue of whether or not the policy was in force and effect on the date of the insured's accident. When instituted in aid of execution as in this case, after an execution's return: "No property found", garnishment proceedings are in the nature of an action in equity, and equitable principles apply. Brooks v. Fields, 25 Okla. 432, 106 P. 828, 830; London & Lancashire Ind. Co. of America v. Courtney supra. One such principle is that having obtained jurisdiction, the court may consider the pleadings amended to conform to the proof and may do all things necessary to the settlement of all issues between the parties with respect to the subject matter of the action, thus obviating a multiplicity of hearings or trials in the same action or of relitigation in other actions. Vinson v. Oklahoma City, 179 Okla. 590, 66 P. 2d 933; Newbern v. Farris, 149 Okla. 74, 299 P. 192. It goes without saying that such a result is always desirable when possible and this was recognized in Woods v. Amulco Products, Inc., 205 Okla. 34, 235 P. 2d 273. There, against the garnishee's contention that his indebtedness to the judgment debtor was not in issue at the trial, said debtor having filed *no* pleadings, we upheld a judgment giving effect to such indebtedness as the debtor proved after appearing in person and by his attorney at the trial. Of course, the facts in that case were rather different from those here, but we think some of the same principles apply, and that a judgment creditor should not be put to the unreasonable, unnecessary and onerous burden of relitigating the question of the garnishee's indebtedness to him, when such indebtedness was specifically asserted in his affidavit for garnishment and the garnishee was free to and should have refuted, or defended against, such allegation, if, in fact, it had any such defense. Nor does the decision in London & Lancashire Indemnity Co. of America v.

Courtney, supra, militate against or alter this conclusion. In that case the judgment creditor failed to take issue with the garnishee's negative answers to his interrogatories and on the day the case was set for trial, moved to dismiss with prejudice. The trial court sustained his said motion, and, against the garnishee's contention that instead of such a dismissal, a general judgment should have been rendered for it on its answer, the appellate court held that a dismissal *with prejudice* to the creditor on the issues covered in the garnishee's answer and determined by it and the judgment creditor's failure to take issue therewith, would have been proper; but as to all other matters, the judgment could be no bar to said creditor's action, and, therefore, as to them, a dismissal *without prejudice* was proper, thus giving effect to the last clause in section 1177, supra.

The judgment of the trial court is hereby affirmed.

JOHNSON, V.C.J., and WELCH, CORN, DAVISON, ARNOLD, O'NEAL, and WILLIAMS, JJ., concur.