Ernest HAGGARD, doing business under the trade name of Haggard Lumber Company and Great Northern Life Insurance Company and Washington National Insurance Company, Plaintiffs in Error,

v.

H. J. CALHOUN, Defendant in Error.

No. 36984.

Supreme Court of Oklahoma.

Feb. 21, 1956.

Rehearing Denied March 20, 1956.

838

John A. Johnson, Tomerlin & High, Oklahoma City, for plaintiffs in error.

Claud Briggs, W. Ryan Russell, Oklahoma City, for defendant in error.

HALLEY, Justice.

In 1945, Ernest Haggard, doing business as Haggard Lumber Company, operated a small portable sawmill in Bryan County. About the 9th of August of that year, he employed H. J. Calhoun to assist with a team in loading logs on a truck and agreed to pay him $5 per day. Mr. Calhoun was an elderly man, unable to read and write, except to sign his name.

Mr. Haggard testified that he was not able to pay for compensation insurance, but purchased what is termed an "Employers' Special Accident Policy," providing practically the same protection as the regular Workmen's Compensation Indemnity Policy. Mr. Haggard had the agent of the Great Northern Life Insurance Company call upon Mr. Calhoun, who was requested by the agent to sign the application for the policy which named as a beneficiary "Haggard Lbr. Co." who is also named as the employer of Calhoun. There is a conflict of testimony with respect to just what the agent told Calhoun before or at the time he signed the application. However, Haggard stated that the policy was for the protection of himself and his employee, Calhoun, in the event the latter suffered an accidental injury while employed by Haggard.

The particular policy issued appears to have been a special policy which was discontinued after some 40,000 policies had been written. It provided for medical treatment and hospital care and a weekly indemnity of $18 for 100 weeks for the loss of an eye. An examination of the policy issued discloses that it states that "Hiram J. Calhoun (herein called the Insured)". We note that on the sheet called application for the policy there is given the number, the date when issued, being August 10, 1945, and bears the notation, "Insured Hiram J. Calhoun."

On August 10, 1945, while loading logs, a limb which had caught on the harness of the team flew back and struck Calhoun on the face near his right eye. The eye was treated by two physicians and later removed on January 22, 1946.

March 27, 1946, the plaintiff Calhoun filed a claim with the Industrial Commission and a hearing was had at Durant on June 2, 1947. On the record of the Industrial Commission appeared a notation "No Ins." It appears that the claim before the Industrial Commission was not prosecuted further. No reason appears in the record as to why the Industrial Commission claim was not prosecuted, but on November 24, 1947, this action was filed in the District Court of Oklahoma County wherein it was alleged that Calhoun was injured while in the employ of Haggard in the logging business and covered by Workmen's Compensation Law, 85 O.S.1951 § 1 et seq.; that while Haggard was the "designated beneficiary" of the policy sued upon, Haggard the employer had not complied with the Workmen's Compensation Law; that Haggard bought and paid for the policy here involved in lieu of compensation insurance and that while Haggard was named as beneficiary in the policy, it was intended that Calhoun have the benefit of the policy in case he was injured and that Calhoun knew nothing of the policy until after he had filed his claim

with the Industrial Commission and attended the hearing; that the failure of the employer to comply with the compensation Act gave Calhoun the right to file this action, and prayed for reformation of the policy.

Plaintiff filed an amended petition and asserted that defendants had fraudulently concealed from him the existence of the insurance policy in which it was admitted that the employer Haggard was named beneficiary. Haggard moved that this action be dismissed on the ground that proceedings were pending before the Industrial Commission for the same injury. A motion to dismiss for Great Northern for lack of prosecution was filed but overruled July 14, 1950. February 6, 1952, Calhoun prayed for permission to file a second amended petition and all other pending motions were overruled.

In a second amended petition, Calhoun alleged that as a part of their oral agreement, Haggard agreed to furnish insurance to protect him against accidental personal injury but it was not alleged that Great Northern knew of such oral agreement. It was claimed that defendants should be estopped from defending because they concealed from the plaintiff the existence of the policy of insurance. It was admitted that Calhoun paid no premiums on the policy.

The court heard evidence and found for the plaintiff for $1,900, $1,800 for the loss of an eye and $100 for medical expenses, with interest from the date such insurance should have been paid.

Haggard, the Great Northern Life Insurance Company and Washington National Insurance Company, which had become merged, have appealed. They contend that under the facts and circumstances in the record the employee Calhoun has no right to ask that the policy of insurance issued at the request and expense of his employer be reformed by making the employee the beneficiary in lieu of the employer who secured and voluntarily paid for the policy, without any express oral agreement with the employee that he would secure insurance to protect the employee against accidental in-jury, and especially when the employee had a claim pending for the same injury before the Industrial Commission.

■ The first proposition is that in an action to reform a written contract on the ground that it differs from the agreement of the parties, either fraud, mutual mistake or accident must be alleged and proven. This contention is clearly supported by the early case of Thraves v. Greenlees, 42 Okl. 764, 142 P. 1021.

However, Haggard sent the insurance agent to Calhoun and requested that he sign an application for the policy issued. Calhoun testified that he expected the policy to carry his name as beneficiary since the agent told him it was for his protection. The employer, Haggard, testified as follows:

"Q. You did say a moment ago in your testimony, and it was your intention that when you took this policy out for Mr. Calhoun, just as you took it out on others, that if the man got hurt, even though you were named in the policy as the actual beneficiary, that is on the face of the policy, if they got hurt and a check was sent to you, you would endorse the check over to the man that got hurt?

"Mr. Johnson: Object to that as incompetent, irrelevant and immaterial. That is not competent evidence.

"The Court: Overruled and exception allowed.

"A. Yes, sir.

"Q. That it was your intention that the man who got hurt would get the benefit of whatever was paid under this policy? A. Absolutely.

"Q. You didn't expect the money to be paid to you to keep, did you? A. No, sir.

"Q. And if Mr. Calhoun got hurt, got his eye hurt and had lost an eye and was entitled to $18 for 100 weeks, plus the benefits under this policy, it was your intention he would get the $1,800? A. Yes.

"Q. And it was your understanding when you took this policy out, as you

did the other policies, that any amount to be paid by the insurance company would ultimately go to the injured man, would it not? A. Yes, sir; and that is what I took it out for."

It is admitted that Calhoun never saw the policy of insurance and had no notice from the Great Northern or from Mr. Haggard that such policy had actually been issued. Calhoun testified that he notified Mr. Haggard shortly after the accident that he had been injured, but being an illiterate man he made no demand upon Haggard and testified that he did not even know the name of the company issuing a policy of insurance, if any policy had in fact been issued.

We think the foregoing frank admission by Mr. Haggard is sufficient to establish that the policy was written for the purpose of protecting the employee, Calhoun, and is sufficient to support the contention of the employee that the mere insertion of the name of Haggard as the beneficiary created an erroneous impression as to the real intention of the parties, which was to protect the employee against accidental injuries while in the employment of Haggard. The policy itself is not entirely clear, as above pointed out, and is clearly ambiguous as to its exact purpose.

■ As to the impending claim before the Industrial Commission for the same injuries, the District Court in rendering judgment for Calhoun permanently restrained and enjoined him from proceeding further before the Industrial Commission. He was clearly not entitled to double indemnity for his injuries.

While Calhoun knew that he applied for an accident policy and testified that the agent told him it was for his protection, he was never told that such policy was ever issued or the name of the insurance company issuing the policy. It was long after his injuries in 1945 when he filed a claim for compensation with the Industrial Commission and its records bore the notation "No Ins."

When we take the recitations in the insurance policy and the application therefor and all of the facts and circumstances surrounding the accident and the events occurring thereafter, the apparent concealment from the employee of the existence of the insurance policy, after the employer knew that Calhoun had been injured, we think the trial court was justified in finding that the insurance policy was ambiguous and that the concealment of such policy from Calhoun after his injuries amounted to fraud.

■ Haggard and the insurance carrier asserted that to justify reformation of a written contract, the proof must be full, clear and unequivocal and sufficiently convincing to establish the facts to a moral certainty. This is a correct statement of the rule of law. In support of this proposition much testimony is quoted and attention is called to the many discrepancies of the testimony of Calhoun and his witnesses, especially as to the dates and what occurred when he claims to have notified Mr. Haggard of his injuries. This case was tried in December, 1954, and plaintiff's accident occurred in 1945. This long delay would naturally tend to create discrepancies, especially by the plaintiff Calhoun who was quite old and admitted that he had a poor memory and was unable to read and write, except to sign his name.

■ We have examined all of the evidence and feel convinced that when the evidence is considered in connection with all of the circumstances and conditions surrounding the case, it is sufficient to meet the requirements to justify the reformation of the insurance contract as to the intended beneficiary.

In 32 C.J., Insurance, Section 259, page 1148, it is said:

"A policy or contract of insurance is to be construed so as to ascertain and carry out the intention of the parties, as it appears from the language of the whole instrument, viewed in the light of the surrounding circumstances, the object or purpose of the contract, its subject matter, the matters naturally or usually incident thereto, the risk insured against, the situation of the parties, the business in which they are engaged at the time, their relation to each other, and the general undertaking of the com-

pany toward its policyholders. The intention of the parties is primarily to be sought in the language of the instrument, and, if possible, it is to be ascertained from the words of the contract alone. However, the intent does not always clearly appear from the language itself and, in arriving at the intention of the parties, it often becomes necessary to take into consideration other matters, such as the surrounding circumstances, the subject matter of the contract, the business in which the parties, or either of them, was engaged at the time, and the purpose they had in view in making the contract. Insurance or indemnity against loss, being the object and purpose of the contract, the courts will construe it, when possible, so as to effectuate this purpose and so as to uphold, rather than defeat or avoid, the contract."

Again in 44 C.J.S., Insurance, § 291, it is said:

"A policy or contract of insurance should be so construed as to ascertain and carry out the mutual intention of the parties thereto as it appears from the language of the whole instrument, and, in case of ambiguity, as viewed in the light of the surrounding circumstances and conditions."

In the same Volume of C.J.S., Insurance, § 297 c (1), it is announced:

"A policy or contract of insurance ordinarily is to be construed liberally in favor of the insured and strictly as against the insurer; or, as more fully stated, if the language employed is ambiguous, or there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted."

We cannot agree that there is not sufficient evidence to establish that plaintiff's sustained accidental injury resulted in the loss of his eye. The discrepancy of dates and the identity of those persons whom the plaintiff told about his injury at the particular time are the natural consequences of the long delay between the accidental injury and the trial of this action, and are not sufficient to cause serious doubt upon the clear statement of the plaintiff that his eye was in good condition before the injury and that the injury which resulted in its removal occurred while he was loading a log and a limb caught on the harness of his team and flew back and injured his face and eye, resulting in its loss by removal some months later.

It is contended that one engaged in a hazardous occupation as defined in the Workmen's Compensation Law and files an Industrial Commission Claim for compensation has no right of "election" to proceed in the District Court in the absence of allegations and proof of negligence by his employer which caused his injury because the statutory remedy is exclusive and that the District Court has no jurisdiction to enforce a contract of insurance to indemnify the employer.

In accordance with the above quotation from 44 C.J.S., Insurance, § 297, this Court has held that an insurance company is liable where the policy of insurance is ambiguous or there is doubt as to the meaning and is fairly susceptible to two interpretations, one favorable to the insured and one favorable to the insurer, the former will be adopted. The Court has held that under such circumstances an action may be maintained in the District Court. Maryland Casualty Co. v. Whitt, 167 Okl. 261, 29 P.2d 65; Continental Casualty Co. v. Goodnature, 170 Okl. 477, 41 P.2d 77; Fidelity & Casualty Co. of New York v. Gray, 181 Okl. 12, 72 P.2d 341.

The employer Haggard testified that he secured the insurance policy for the benefit and protection of the employee, Calhoun, and also for his own protection in the event Calhoun suffered an injury. The agent for the insurance company admitted that the policy was written with full knowledge that its purpose was to operate as a substitute for "Workmen's Compensation Insurance." This clearly means that the employee was to receive the protection and benefits of the policy, the latter being identi

cal with those provided by the Workmen's Compensation Law.

In Continental Casualty Co. v. Goodnature, supra, it is said in the syllabi [170 Okl. 477, 41 P.2d 78]:

"Where a policy of insurance is susceptible of a construction placed thereon by the parties thereto, such construction should ordinarily be adopted by the courts as controlling.

"If a contract of insurance is ambiguous or uncertain, and the intention of the parties is not clearly ascertainable from the instrument itself, the court may determine its proper interpretation and the construction to be placed upon it from evidence adduced at the hearing showing the circumstances under which it was made, and the subject-matter to which it relates may be considered, and, with these aids, the court should so interpret the contract as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as that intention is ascertainable and lawful.

"If a policy of insurance is susceptible of two constructions, the one is to be adopted which is most favorable to the insured."

█ It is claimed that Calhoun is not entitled to recover because he failed to give notice of his injury within 20 days after it occurred as provided by the policy. The policy also provided that failure to comply with this provision would not prevent recovery if notice was given " * * * as soon as was reasonably possible."

The trial court found that the facts and circumstances excused Calhoun from giving notice as required by the policy. It should be remembered that he only worked one day after the day on which he was injured. He was never told that a policy had been issued; never furnished any blanks for presenting claims, and had no notice whatever of the existence of such a policy until he filed his claim with the Industrial Commission. We think the unusual circumstances shown are clearly sufficient to support the finding that the plaintiff gave notice as soon as reasonably possible.

The judgment of the trial court is affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and DAVISON, BLACKBIRD, JACKSON and HUNT, JJ., concur.