Traci DEFFENBAUGH and Kristina
Olson, Plaintiffs–Appellants,

v.

Savilla HUDSON, Defendant–Appellee,

and

Farmers Insurance Company, Mid–Con-
tinent Casualty Company, and City
of Oklahoma City, Defendants.

No. 71316.

Supreme Court of Oklahoma.

April 17, 1990.

Howard K. Berry, III, Naifeh & Woska, A Professional Corp., Oklahoma City, for plaintiffs-appellants.

John F. Percival, Messrs. Culp, Heath, Sushnik, Percival & Percival, Oklahoma City, for defendant-appellee.

OPALA, Vice Chief Justice.

The dispositive question in this appeal is: Does the co-employee-driver, who was using an individually owned and insured vehicle, stand shielded from tort liability by the immunity provided in the Workers' Compensation Act [1] [Act], when co-employee-passengers injured in the course of their common employment seek vehicular negligence recovery that is to be limited to the driver's public liability coverage? We answer in the affirmative.

## I.

### THE ANATOMY OF LITIGATION

The appellants, Traci Deffenbaugh and Kristina Olson [plaintiffs or passengers], sued the appellee, Savilla Hudson [driver or insured], for injuries negligently inflicted in a one-car accident. The automobile was personally owned and individually insured by the driver. At the time of the harmful event these three persons, who are registered nurses, were employed by the same hospital. The plaintiffs had voluntarily chosen to ride with the insured, who had offered them transportation to and from an educational seminar. The accident occurred while they were on the return trip.

The driver sought summary judgment. While *most* of the facts stood undisputed, there was below a controversy over whether the injuries sustained by the plaintiffs may be considered as *job-related* for purposes of invoking the immunity or "exclusive remedy" defense provided by § 12 of the Workers' Compensation Act (85 O.S. Supp.1984 § 12), whose pertinent terms are as follows:

> "[t]he *liability prescribed in Section 11* of this title *shall be exclusive and in the place of all other liability* of the employer *and any of his employees ... at common law or otherwise,* for such injury, loss of services, or death, to the employee...." (Emphasis added.)

Section 11 [2] mandates that all employers subject to the Act pay or otherwise provide compensation for injuries to the employee "arising out of and in the course of his employment." According to the driver, the harm suffered by the passengers was strictly job-related. Although the latter individuals had tendered below evidentiary materials tending to characterize the trip as having been *dehors* the work purview, *their appellate brief now concedes* [3] the injurious event did in fact occur within "the course and scope of their employment." [4] The trial court implicitly found an

---

**1.** 85 O.S.1981 §§ 12 and 122.

**2.** The pertinent terms of 85 O.S.Supp.1985 § 11 provide:

"*Every employer subject to the provisions of the Workers' Compensation Act shall pay,* or provide as required by the Workers' Compensation Act, *compensation* according to the schedules of the Workers' Compensation Act *for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment,* without regard to fault as a cause of such injury * * *" (Emphasis added.)

**3.** Admissions in an appellate brief are acceptable as material supplementing the record. *Womack v. City of Oklahoma City,* Okl., 726 P.2d 1178, 1181 n. 8 (1986).

**4.** In defense of the driver's motion for summary judgment the passengers argued, *inter alia,* "[t]he use of the automobile was not part of the employment relationship." While this, as well as other statements, may be viewed as disputing the job-related character of the accident, they

absence of factual issues for trial when it gave summary judgment to the driver. Our task on review is to ascertain whether the law was correctly applied to the now undisputed facts in the record. We hold the judgment against the plaintiffs is free of reversible error.

## II.

## THE ARGUMENTS PRESSED BY THE PLAINTIFFS FOR CORRECTIVE RELIEF FROM SUMMARY JUDGMENT ARE WITHOUT SUPPORT IN THE APPLICABLE LAW

### A.

### *The "waiver" claim*

■ The passengers (plaintiffs) urge that the driver "waived" her § 12 immunity defense when she "privately and independently secured automobile insurance covering the acts complained of." For the reasons to be stated, this argument stands unsupported both by the facts as well as by law. As for the extent of "coverage" to which plaintiffs make reference in their brief, it is to be noted at the outset that

automobile liability insurers are not obligated by law to protect their insureds against responsibility which falls within the workers' compensation reparations regime. The terms of 47 O.S.1981 § 7–324(f)[5] clearly *relieve* insurers of any legal obligation *to include in the standard motor vehicle liability policy a provision for indemnity against employment-related harm.*

■ Although an insurer may legally undertake to provide that coverage which exceeds what the law minimally requires,[6] *this record contains no policy* from which we can divine whether the insurer has done so in this instance.[7] We will not assume from a silent record that the insurer undertook voluntarily to provide coverage dehors that which is mandated by law. In any event, a public liability insurer, when defending in behalf of and in the name of the insured, generally is entitled to assert the latter's legal defenses.[8] We find no impediment to the immunity's assertion here.

■ A true waiver is the voluntary and intentional relinquishment of a known *right.*[9] The evidentiary materials before

also appear to support the plaintiffs' "dual capacity" argument, which is discussed in Part II(B) of this opinion. We will hence treat their quest for corrective relief from summary judgment on the latter ground as unimpeded by the later admission on appeal that the injurious event did occur in the course of employment.

5. The provisions of 47 O.S.1981 § 7–324(f) are as follows:

"(f) *Policy need not insure workers' compensation.* Such motor vehicle liability policy *need not insure any liability under any workers' compensation law* nor any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of any such vehicle nor any liability for damage to property owned by, rented to, in charge of or transported by the insured." (Emphasis added.)

6. See 36 O.S.1981 § 3614, whose pertinent terms are:

"A policy may contain additional provisions not inconsistent with this Code and which are:
" * * *
"3. Desired by the insurer and neither prohibited by law nor in conflict with any provisions required to be included therein."

7. We express no opinion on whether, or under what circumstances, an employee's purchase of automobile liability insurance could ever be treated as an effective "waiver" of the insured's § 12 immunity defense.

8. "A liability policy covers all losses *for which the insured is legally liable,* which are fairly within the terms of the policy, *but it cannot be extended to liabilities or losses which are neither expressly nor impliedly within its terms.*" 6B Appleman, Insurance Law and Practice, § 4254 at 26.
When an insurance policy provides indemnity against liability, the insurer's duty to defend attaches immediately ·after the claim is made, and the insurer must thereafter act *in the name and on behalf of the insured;* the insurer's legal position *vis-a-vis* the injured party becomes *coextensive* with that of the insured. See *Culie v. Arnett,* Okl., 765 P.2d 1203, 1206–1207 (1988); *Maryland Casualty Co. v. Peppard,* 53 Okl. 515, 157 P. 106, 110 (1916); see also 7C Appleman, Insurance Law and Practice, §§ 4681 et seq.

9. *Faulkenberry v. Kansas City Southern Ry. Co.,* Okl., 602 P.2d 203, 206–207 (1979); *Guinn v. Church of Christ of Collinsville,* Okl., 775 P.2d 766, 777 (1989); see also *Steiger v. Commerce Acceptance of Okla. City, Inc.,* Okl., 455 P.2d 81, 83 (1969) (the court's syllabus ¶ 4); *Bay Petroleum Corp. v. May,* Okl., 264 P.2d 734, 736 (1953).

the trial court are *devoid* of any manifestation that, when the insured procured her policy, she *knew of and voluntarily relinquished a right* to claim statutory immunity from liability for job-related negligence. Moreover, the breadth of the policy's promise is the *insurer's right* that cannot be *unilaterally* modified by the insured's "waiver" of the § 12 immunity defense. No enlargement of the insurer's *ex contractu* promise can become effective without the insurer's own consent.[10]

Cogent decisional-law support for the driver's nisi prius summary judgment is afforded by *Carroll v. District Court of Fifteenth Judicial District.*[11] There, a volunteer fireman who, during the course of his employment, had parked his personally owned and insured pickup truck near an automobile fire to which he had been called. While he and another were busy extinguishing the fire, the truck rolled down an incline and seriously injured the insured's co-worker. The truck owner, when sued for negligently parking his vehicle, interposed the compensation law's statutory defense of immunity. This court concluded that *both* firemen were acting within the scope of their employment when the harmful event occurred. The plaintiff was engaged as a fireman when the truck struck him and the insured *had* entered upon his duties as a fireman "[u]pon responding to the alarm."[12] *We expressly held in Carroll that a worker sued by a co-worker for negligence in the workplace may invoke the § 12 immunity bar.*

Whatever distinctions may be drawn between *Carroll* and the instant controversy, none of them warrants departure from the precedent established in that case. The plaintiffs nevertheless invite our attention to other authority in which, they urge, this court has sanctioned an immunity waiver *to the limit of liability insurance coverage* available to the actor sought to be held accountable in negligence. For example, in *Schrom v. Oklahoma Industrial Development*[13] a guest at a state lodge sued for injuries sustained when he tried to walk through an unmarked glass door. The question resolved there was whether sovereign immunity precluded recovery. This court held that the state agency's purchase of liability insurance *in reliance on legislative authority* constituted the state's implied consent to both a tort suit and to a recovery not exceeding the limit of purchased coverage.[14]

In *Schrom* the insurance covered *the very harm* for which the risk was assumed and the tort action brought. Here, *in the face of statutory immunity*, the plaintiffs seek recovery for harm *that is admittedly job-related* and within a legislatively approved *exclusion* from the risk of automobile public liability coverage.[15] *No immunity* was found to exist in *Schrom* because, as a matter of law, the state agency had *impliedly consented* to be sued for negligence.[16] The plaintiffs here ask that

---

**10.** See the authorities cited *supra* note 8; *Continental Casualty Co. v. Goodnature,* 170 Okl. 477, 41 P.2d 77, 79–80 (1935) (absent disagreement between insured and insurer, the construction placed by them upon the policy ordinarily controls); *Moral Ins. Co. v. Steves,* 208 Okl. 529, 257 P.2d 836, 839 (1953) (an insurer's liability can neither be created nor enlarged by the institution of a garnishment proceeding).

Courts of most jurisdictions agree *the doctrine of waiver is unavailable for broadening coverage* to include risks that are neither contained in, nor expressly excluded from, the policy. See, e.g., *Ron Henry Ford v. Nat. Union Fire Ins. Co.,* 8 Kan.App.2d 766, 667 P.2d 907, 909 (1983); see also generally, Annot. Comment Note: Doctrine of estoppel or waiver as available to bring within coverage of insurance policy risks not covered by its terms or expressly excluded therefrom, 1 A.L.R.3d 1139.

**11.** Okl., 579 P.2d 828 (1978).

**12.** *Carroll v. District Ct. of Fifteenth Jud. Dist.,* supra note 11 at 832.

**13.** Okl., 536 P.2d 904, 905 (1975).

**14.** *Schrom v. Oklahoma Industrial Development,* supra note 13 at 906–907.

**15.** See 47 O.S.1981 § 7–324(f), *supra* note 5.

**16.** See also *Nichols v. Department of Corrections,* Okl., 631 P.2d 746, 748 (1981) (the Department of Corrections' governmental immunity defense was expressly waived by statute to the extent of available liability coverage); *Lamont Ind. Sch. Dist. # I-95 of Grant Cty. v. Swanson,* Okl., 548 P.2d 215, 217 (1976) (school district impliedly consented to be sued to the extent of

we saddle the insurer with liability for coverage whose *exclusion* is legislatively sanctioned. Their reliance on *Schrom* is clearly misplaced. That case dealt with the enforceablility of statutorily authorized agency-purchased indemnity protection.

In *Unah By and Through Unah v. Martin* [17] this court expressly modified the *common-law doctrine of parental immunity,* allowing a child to recover for the father's vehicular negligence only to the limit of the latter's automobile liability coverage. In effect, we withdrew the common law's recognition of parental non-liability for the monetary limit of effective vehicular negligence coverage. This made the immunity defense *unavailable* to protect the father (or his insurance carrier) from *covered* liability. The insured's *statutory* immunity defense in this case is judicially impenetrable and thus poses an insuperable barrier to recovery.

In *Hooper By and Through Hooper v. Clements Food* [18] a minor child sued the father's employer for injuries from the parent's *on-the-job* negligence. The question was whether parental immunity shielded *the employer* from respondeat superior liability for harm to the child. This court answered in the negative, adopting the judicially fashioned view that parental immunity is personal in character and cannot be transferred or "delegated" to another. In short, the shield could not inure to the employer's benefit.[19]

*Hooper* offers no support for the plaintiffs' attempt to pierce the § 12 immunity defense and to reach for the immune driver's insurance coverage. In *Hooper,* respondeat superior afforded the child a legal vehicle which opened the way to employer

liability, while here the passengers have tendered no argument upon which the driver may be held to respond in damages.

Other reasons could be assigned why all the cited cases are inapposite and this driver cannot be held to have either "waived" her § 12 shield or consented to be sued merely because she had purchased liability insurance. Firstly, we repeat, the evidentiary materials *do not* indicate she bought insurance upon a mutual understanding with the insurer that her policy was to cover nonexistent liability—one against which she can assert § 12 immunity. Secondly, the insured was *required by law* to purchase the insurance.[20] Thirdly, even in the absence of the latter requirement, the standard public liability coverage protects her from *legal accountability to which she may be . subjected,* not from recovery against which there stands a legal barrier.

■ There is yet another, if not the prime, juristic distinction between this and the cited "waiver" cases, which transcends their factual differences. The plaintiffs here are attempting to overcome a *statutory* barrier, while in the other cases this court was dealing with *common-law* immunities. Common-law doctrines are open to judicial repudiation, modification and expansion;[21] statutes are not so elastic. Courts do not inquire into the merits, wisdom or advisability of legislative enactments but only into their meaning and constitutional validity.[22] In short, unlike the bar of a common-law defense, *statutory* immunity cannot be withdrawn (from the insured) by judicial fiat.

Although the plaintiffs seem to recognize this fundamental restriction on this court's power, they nonetheless urge that we

purchased public liability insurance). For an earlier Oklahoma expression about the meaning of a legislative enactment that authorizes a state agency to purchase limited liability coverage, see *Henry v. Oklahoma Turnpike Authority,* Okl., 478 P.2d 898, 900–901 (1970).

17. Okl., 676 P.2d 1366 (1984).

18. Okl., 694 P.2d 943 (1985).

19. *Hooper By and Through Hooper v. Clements Food, supra* note 18 at 945.

20. The plaintiffs themselves point out in their appellate brief that the insured/driver knew she

had purchased liability insurance "to comply with Oklahoma law." Their evidentiary materials, submitted below in defense of the driver's quest for summary judgment, implicitly support this conclusion.

21. See *Vanderpool v. State,* Okl., 672 P.2d 1153, 1154 (1983); *McCormack v. Oklahoma Pub. Co.,* Okl., 613 P.2d 737, 740 (1980).

22. *Application of Goodwin,* Okl., 597 P.2d 762, 766 (1979).

should "interpret" the immunity statute (85 O.S.Supp.1984 § 12) with the same consideration of the *circumstances* in this case that we would give if a common-law immunity were in question.[23] We must decline the invitation to amend § 12 and the provisions of 47 O.S.1981 § 7–324(f)[24] by extending public liability coverage to persons injured by the vehicular negligence of an individually insured co-employee/driver acting in the course of "common employ."[25] The statutory modification sought by the plaintiffs calls for an exercise of powers constitutionally assigned to the legislative department.

Section 12 clearly abrogates the common-law right of action by one employee against another for accidental, job-related injuries.[26] This court must obey the clear *mandate* of 12 O.S.1981 § 2. It directs that *statutes in derogation of the common law "shall be liberally construed to promote their object."*[27] (Emphasis added.)

### B.

*The plaintiffs' notion that the "dual capacity" doctrine warrants reversal of summary judgment for the driver*

■ The passengers next ask that we apply the "dual capacity" doctrine and treat the insured as though she were possessed of two distinct legal identities—one, *qua* employee, and the other, as a *stricto sensu* motorist on a public highway. It is urged that, consistently with the criteria developed in *Weber v. Armco, Inc.*,[28] it is the second identity's co-existence with the first that should preclude the driver from invoking here the § 12 bar.

In *Weber* a contractor's employee, after receiving workers' compensation for injuries from an allegedly defective wellhead, sued the manufacturer of the harm-dealing product. The accident had occurred while the worker was assisting an employee of the defendant/manufacturer. Because the latter also had been hired by the contractor to install the wellhead, the manufacturer was considered "in the same employ" as the plaintiff. The worker contended the defendant acted *both* as manufacturer and employer, and, because of this "dual capacity," the compensation law's barrier could not be invoked. We there concluded the defendant/manufacturer's duty to produce a defect-free product and the same defendant's duty as an employer to provide a safe workplace are "so inextricably wound that they cannot be logically separated into

---

23. In their plea for reversal the plaintiffs suggest, for example: 1) the legislature's "clear intent" in the enactment of the compulsory automobile liability insurance law was

"to make benefits available to injured people and make those benefits available from the casualty companies exercising the privilege of doing business in this state; the intent of the Legislature cannot be said to be that his compulsory insurance is only to cover accidents for which there is [sic] no workers' compensation benefits available"

and 2)

"[i]f the Plaintiffs had chosen to travel by bus, which they were free to do, and were injured in a one-bus collision, they could maintain a tort action against the driver, in addition to the action against their employer under the Workers' Compensation Act. It is unjust and inequitable to bar the injured Plaintiffs from recovering otherwise available insurance proceeds because they chose an insured private vehicle over an insured public vehicle...."

24. For the terms of 47 O.S.1981 § 7–324(f), see *supra* note 5.

25. See 85 O.S.Supp.1986 § 44, whose pertinent terms provide:

"(a) If a worker entitled to compensation under the Workers' Compensation Act is injured or killed by the negligence or wrong of another *not in the same employ*, such injured worker shall, before any suit or claim under the Workers' Compensation Act, elect whether to take compensation under the Workers' Compensation Act, or to pursue his remedy against such other. * * *" (Emphasis added.)

26. See *Carroll v. District Ct. of Fifteenth Jud. Dist., supra* note 11 at 829 (the court's syllabus ¶ 1).

27. See also 25 O.S.1981 § 29, whose terms provide:

"The rule of the common law, that statutes in derogation thereof are to be strictly construed, has *no application to the laws of this state*, which are to be *liberally construed* with a view to effect their objects and to promote justice." (Emphasis added.)

28. Okl., 663 P.2d 1221 (1983).

two distinct legal" personae.[29]

Although in *Weber* the court rejected the doctrine's application for cases where common-law liability is sought to be imposed upon an *employer/manufacturer*, we noted that situations could arise in which dual characteristics *might* preclude an employer from asserting the § 12 immunity.[30] The test to be applied here is whether, *by established legal standards*, the *co-employee* identity of the insured/driver is so completely and distinctly independent from, and unrelated to, her status as a *motorist* on a public highway that the law should recognize the other persona as though it were a totally separate juristic entity.[31]

The plaintiffs have not called our attention to any legal principle that would militate in favor of dichotomizing the legal identity of the defending co-employee-driver. The mere purchase of automobile insurance is certainly no reason to create for her, *qua* insured, a separate persona capable of circumventing a statutorily erected immunity barrier.

Neither can it be said that the function of the insured-driver "generates obligations unrelated to those flowing from that of ... [co-employee]."[32] The duty to drive carefully exists whether the travel is job-related or on one's own frolic. The plaintiffs seek to invoke the dual personae doctrine *solely* to penetrate the § 12 shield. In *Weber* we spoke of this purpose disapprovingly and embraced the view that "[t]he doctrine [of dual personae] requires a strict and limited application to avoid imposing liability in every instance...."[33]

On the day of the accident this insured did not stray from the bounds of her co-employee status and create a separate set of duties towards the plaintiffs-passengers. The latter had been riding with the insured *only because* they had accepted an offer for carriage on an *employment-related* trip. Were it not for their co-employee status *vis-a-vis* the driver, they would not have been in the car.

## C.

### The "independent relationship" argument

In *Travelers Insurance Company v. L.V. French Trucking Service*[34] a trucking company employee suffered a compensable electric shock while attempting to lift a low-clearance power line hanging over a road. He sued the owner/electric company in tort. After paying an agreed judgment for the worker, the defendant's liability carrier (as subrogee) sought indemnification from the employer (trucking company) based on a statute (63 O.S.1981 § 984) which imposes liability in favor of a power line owner for the *loss* due to accidental contact with a high voltage line. The employer—who had fulfilled its compensation law obligations—interposed the § 12 immunity.

Applying *Harter Concrete Products, Inc. v. Harris*,[35] a case called to our attention in the plaintiffs' appellate brief, we concluded that § 984 creates a jural relationship sufficiently independent to place the employer's offending conduct, which generated the liability sought to be enforced, outside the purview of protection afforded by the § 12 shield.[36] The plaintiffs here seem to press the argument that the driver's purchase of automobile insur-

---

**29.** *Weber v. Armco, Inc., supra* note 28 at 1226.

**30.** *Weber v. Armco, Inc., supra* note 28 at 1226.

**31.** See *Weber v. Armco, Inc., supra* note 28 at 1225; accord, *Hearn v. Petra Intern. Corp.*, Okl. App., 710 P.2d 769, 770–771 (1985) (in the absence of grounds to disregard the corporate identities of a wholly-owned subsidiary and its parent corporation, an employee of the former cannot be treated as one of the latter, and hence the § 12 immunity defense may *not* be invoked by the parent corporation in a tort action by the employee).

**32.** See *Weber v. Armco, Inc., supra* note 28 at 1226–1227.

**33.** See *Weber v. Armco, Inc., supra* note 28 at 1226.

**34.** Okl., 770 P.2d 551 (1989).

**35.** Okl., 592 P.2d 526 (1979).

**36.** *Travelers Ins. v. L.V. French Tr. Serv., supra* note 34 at 554.

ance, coupled with her statement she would not have used the car without it, creates an independent relationship which *excepts* this claim from the operation of § 12 bar. We hold that under the *Travelers* rationale these factors are clearly insufficient for piercing the insured's § 12 defense.

### D.

*The nature of "policy considerations" urged by the plaintiffs*

The plaintiffs contend generally that the public policy considerations for the workers' compensation scheme "are not invoked by the facts of the present case," and the exclusive remedy doctrine should not be mechanistically applied to prevent them from a recovery in tort to the limit of the driver's public liability coverage. In light of the plaintiffs' admission that the injurious event did occur "in the course and scope of their employment" we consider this argument lacking in persuasive force.[37]

Because *none* of the plaintiffs' arguments surmounts the legal hurdles that lie in the path of their quest for relief, the trial court's judgment is

AFFIRMED.

HARGRAVE, C.J., and LAVENDER, DOOLIN and SUMMERS, JJ., concur.

SIMMS, J., concurs in result.

ALMA WILSON, J., concurs in part and dissents in part.

HODGES, J., dissents.

KAUGER, J., not participating.

ALMA WILSON, Justice, concurring in part and dissenting in part:

It is settled in this jurisdiction that an employee is immune from tort liability for injury to a co-employee when the co-employee receives workers' compensation for the injury. 85 O.S.Supp.1984, § 12; *Barfield v. Barfield*, 742 P.2d 1107 (Okla.1987); *Carroll v. District Court for the Fifteenth*

*Judicial District,* 579 P.2d 828 (Okla.1978). Accordingly, I concur with the majority opinion insofar as it protects the Defendant, Hudson, as a co-employee from tort liability to the Plaintiffs.

The duty of Hudson's liability carrier to defend her in this action is not removed by § 12 and 47 O.S.1981, § 7–324(f). Section 7–324(f) is not applicable to the instant action by injured co-employees against a co-employee driver. Subsection (f) does not authorize exclusion of injury to co-employees, as third party beneficiaries, from the compulsory liability coverage of a co-employee's private passenger vehicle. Subsection (f) is limited to motor vehicle liability policies of employers. It allows the motor vehicle liability insurance carrier of the employer to issue a liability policy which relieves the carrier of the duties as a workers' compensation carrier for the employer, except employers of domestic employees. This is the standard exclusion in a motor vehicle liability insurance policy. A liability insurance carrier is not relieved of its duty to defend its insured by § 7–324(f), even if the insured is an employer and even if the defense simply requires pleading and proving the affirmative defense of § 12 exclusivity of workers' compensation liability. Accordingly, I dissent from the majority opinion insofar as it extends the § 12 grant of immunity to protect the liability carrier of a co-employee from its duty to defend under the liability insurance policy.

Plaintiffs filed this action against Hudson alleging negligent operation of her motor vehicle and against Farmers Insurance Company as the underinsured motorist insurance carrier for Hudson and Mid–Continent Casualty Company as the underinsured motorist insurance carrier for Plaintiff Deffenbaugh. Both underinsured motorist insurance claims have been settled and the carriers have been dismissed with prejudice from this action. Thus, underinsured motorist insurance coverage in De-

---

37. Equally meritless are the plaintiffs' arguments that 1) they are third-party beneficiaries of the driver's liability policy and 2) the terms of Art. 5, § 51, Okl. Const., which prohibit the enactment of laws "granting to any ... individual any exclusive rights, privileges, or immunities within this state," show "immunity from suit is not favored" in Oklahoma.

fendant Hudson's liability policy is a moot issue. The erroneous expansion of immunity under § 12 to a liability carrier by majority opinion certainly can not be further extended to preclude uninsured/underinsured motorist coverage. *Barfield v. Barfield, supra.*