Brooks H. BEARDEN, Appellant,

v.

CITY OF TULSA, Oklahoma, a municipal corporation, Appellee,

and

Storey Wrecker Service, Inc., and Earl Wolfe, Defendants.

No. 74390.

Court of Appeals of Oklahoma, Division No. 2.

Nov. 12, 1991.

C. Rabon Martin, Stuart Southerland, Martin & Associates, Tulsa, for appellant.

Neal E. McNeill, City Atty., David L. Pauling, Asst. City Atty., Tulsa, for appellee.

BRIGHTMIRE, Judge.

Presented for review is the question of whether it was error for the trial court to grant defendant City of Tulsa a summary judgment in the plaintiff's action to recover damages from the city on a theory of inverse condemnation alleged to have occurred when the city abated a public nuisance by removal of the plaintiff's vehicles, equipment and trash from a vacant lot.[1]

We hold the summary adjudication was not error and affirm the judgment.

I

The facts are that on June 11, 1987, the city development department for the City of Tulsa, Oklahoma, issued a notice to abate a public nuisance located on a certain lot located at 1107 S. Lewis Place. The notice alleged that the lot "lacks necessary maintenance or otherwise has an accumulation of trash and/or the growth of weeds or grass to such an extent that said proper-

ty is a hazard to the health, safety and welfare of the citizens of Tulsa." The notice directed the owner to "[r]emove all junk, debris, dead tree limbs, trash, and mow grass and weeds" by June 29, 1987, or appear before the mayor and board of city commissioners June 30, 1987, to show cause why he should not be required to do so.[2]

On June 30, 1987, the board of city commissioners, after hearing the testimony of witnesses, adopted a resolution stating that unless certain operable and inoperable motor vehicles and construction equipment were removed from the premises within two days the city would "cause the vehicle and/or its parts to be removed and stored in a proper place."

The notice further stated that the property, if removed by the city, could be returned by making application to the code enforcement administrator within thirty days after the removal upon the payment of the removal and storage costs.[3]

A similar resolution was issued the same day that authorized the city to "[r]emove all junk, debris, dead tree limbs, [and] trash" from the premises.

The parties agree that on August 27, 1987, the resolution calling for the removal of the motor vehicles and equipment was executed by the Tulsa Police Department and the seized property was stored at the facility of defendant Storey Wrecker Service, Inc. The plaintiff never attempted to retrieve the property nor was he compensated for its loss.[4]

Neither party denies that the plaintiff filed his petition in the district court without having complied with the notice provi-

---

**1.** This appeal is only from the judgment granted to the city.

**2.** The plaintiff does not dispute that the notice was posted on subject property. In his petition the plaintiff claims that notice was given June 7, 1987.

**3.** The resolution states that Frank J. and Hazel G. Bearden were the record owners of the real property. Appellant Brooks H. Bearden admits in his brief that he is the owner of subject personal property and does not deny actual no-

tice of the nuisance abatement proceedings. Admissions in an appellate brief are acceptable as material supplementing the record. *Deffenbaugh v. Hudson*, 791 P.2d 84 (Okl.1990).

**4.** The plaintiff also alleges in his petition that he contracted with his attorney, defendant Earl Wolfe, to bring a civil action against the city to obtain redress for the seizure of his property but that the attorney neglected to take the necessary action to do so.

sions of the Oklahoma Governmental Tort Claims Act. 51 O.S.Supp.1990 § 156(A).[5]

On October 20, 1989, the trial court found that there were no material facts in dispute with reference to the plaintiff's inverse condemnation claim and sustained the city's motion for summary judgment. The plaintiff appeals contending that the city's removal of the equipment constituted a taking of his property for public use without compensation under both the federal and state constitutions,[6] and therefore he is entitled to recover the value of such property in this inverse condemnation action without having to comply with the notice requirements of the Oklahoma Governmental Tort Claims Act.

## II

 The plaintiff's principal contention—that the city's removal of the property was a condemnational taking of private property for public purposes within the contemplation of both federal and state eminent domain provisions—is without merit.

The short answer to the plaintiff's argument is that the eight motor vehicles and construction equipment along with trash, high weeds and debris were not "taken for public use" by the city, but were taken in order to abate a public nuisance which the plaintiff created and allowed to exist in violation of law.

The case cited by the plaintiff—*Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984)— is not in point. The question resolved there was whether the state's massive condemnation of multiple tracts of land for the purpose of selling them to a given tract's lessee, was a constitutional "tak[ing] for public use" within the contemplation of the Fifth Amendment. In holding it was, the Supreme Court said that "it is only the

taking's purpose, and not its mechanics, that must pass scrutiny under the Public Use Clause." *Id.* at 244, 104 S.Ct. at 2331.

The *Midkiff* takings were pursuant to a state land reform law aimed at ending an ancient feudal land tenure system under the control of one island high chief known as the ali'i nui, which perpetuated oligarchal private ownership of 47 percent of the land in the Hawaiian Islands.[7] Thus the high court held the eminent domain condemnation did not run afoul of the Fifth Amendment Public Use Clause even though the taking inured to the benefit of private individuals in the first instance. Why? Because the ultimate purpose was a significant public one.

In the case at bar there was no taking of the plaintiff's property by the city in an eminent domain sense for any purpose, public or private. All the city did was order the removal of subject property from a lot which the plaintiff had permitted to become a *public nuisance in violation of* city ordinance. The plaintiff himself had been given ample notice and opportunity to remove the vehicles, equipment, tree limbs and trash from the lot, and when he failed to do so the city did the only other thing it could do—remove it at the plaintiff's expense.

The plaintiff does not contend that the removal in any way contravened federal, state or municipal law. He had every right to retrieve his property from Storey Wrecker upon payment of towing and storage charges. He declined to do so and evidently opted to allow the property to be sold to satisfy such charges.

## III

We hold, therefore, that the trial court did not err in granting the city a summary

---

5. The trial court's sustention of the city's motion to dismiss with prejudice the plaintiff's tort claim on a theory of conversion is not complained of on appeal.

6. U.S. Const. amend. V; Okl. Const. art. 2, § 24.

7. Another 49 percent was owned by the state and federal governments. On Oahu, for in-

stance, the most urbanized of the islands, "22 landowners owned 72.5% of the fee simple titles." And the legislature found that "18 landholders, with tracts of 21,000 acres or more, owned more than 40% of [the] land." *Midkiff,* 467 U.S. at 232, 104 S.Ct. at 2325.

judgment on the plaintiff's inverse condemnation claim.

Affirmed.

MEANS, P.J., and RAPP, J., concur.