OKLAHOMA TRANSP. CO. v. HARTFORD ACCIDENT & INDEMNITY CO.

No. 34882. June 24, 1952.

*245 P. 2d 717.*

F. M. Dudley and Richardson, Shartel & Cochran, Oklahoma City, for plaintiff in error.

Gilliland, Withington &. Shirk, Oklahoma City, for defendant in error.

JOHNSON, J. On July 15, 1947, plaintiff issued to defendant, Oklahoma Transportation Company, an automobile bodily injury and property damage Policy, AB-134483. This policy was canceled by the Oklahoma Transportation Company on September 10, 1947, after remaining in force for 57 days. This action involves the premium due plaintiff thereunder.

The policy and what is referred to premium computation endorsement were made a part of this petition and several exhibits were introduced in connection with an agreed statement of facts. The agreed statement of facts contains the following:

"16. It is agreed that if plaintiff's construction of the contract is correct there is due and owing plaintiff the sum of $11,130.77 less rebates of $3,-561.88 or a total of $7,568.89."

The premium computation endorsement is as follows:

"The Insured and the Company agree that: that portion of the earned premium of this Policy applicable with respect to the insurance afforded by the Policy for Bodily Injury Liability Limits of $10,000 each person and $10,000 each accident and for the Property Damage Liability Limit of $10,000 each accident shall be computed in accordance with provisions of this Endorsement.

"1. *Elements in Development of the Earned Premium as Determined by*

*this Endorsement.* The computation of each earned premium is based upon the following elements:

"a. *Standard Premium.* The standard premium shall be the sum of:

"(1) The premium computed by the application of the rate of $3.25 to each $100 of the total gross earnings received by the Insured for passenger transportation during the policy year, and

"(2) The premiums obtained by the application of rates designated by the letter 'S' applicable with respect to the insurance afforded by the Policy to owned private passenger and commercial automobiles and for non-owned automobiles, such premiums to be computed in accordance with the terms of the Policy exclusive of this Endorsement.

"b. *Basic Premium.* The Basic Premium is 27.5% of the standard premium.

"c. *Incurred Losses.* Incurred losses under this Policy shall mean the actual paid losses, the reserves as estimated by the Company for unpaid losses and allocated loss expense, as of the computation dates hereinafter specified, provided that:

"(1) The limit of such reserves and paid losses, exclusive of allocated loss expense, to be included herein arising out of injury to or death of one or more persons in one accident shall be $10,000, and

"(2) The limit of such reserves and paid losses, exclusive of allocated loss expense, to be included herein arising out of injury to or destruction of property in any one accident shall be $10,000.

"2. *Earned Premium as Computed by this Endorsement.* The earned premium for such portion of this Policy shall be computed in accordance with the provisions of this Endorsement and shall be the sum of the following:

"a. The Basic Premium, and
"b. 120% of the Incurred Losses.

"The Earned Premium so determined shall in no event:

"a. Be less than the sum of the amount obtained by the application of a rate of $1.625 to each $100 of the total gross earnings received by the Insured for passenger transportation during the policy period and that portion of the standard premium designated in Division 1 (a) (2) foregoing, or

"b. Be greater than the sum of the amount obtained by application of a rate of $4.875 to each $100 of total gross earnings received by the Insured for passenger transportation during the policy period and that portion of the standard premium designated in Division 1 (a) (2) foregoing.

"In event of cancellation of the Policy by the Insured the minimum earned premium as determined by this Policy if so canceled shall be equal to the earned standard premium applicable to such Policy.

"For the purpose of computation of the maximum premium as hereinbefore specified any Policy canceled by the Insured or canceled by the Company for non-payment of premium shall be computed pro rata for the period the Policy so canceled was in force and then extended on a pro rata basis for the full twelve months' period.

"In the event the Company ceases to be the Insurer for Insured, initial computation of the premium computed in accordance with the provisions of this Endorsement shall be made as of a date six months after the date the Company ceases to be such insurer, within sixty days thereafter, and subsequent recomputations of such earned premium shall be made as of dates twelve and twenty-four months after the initial computation, within sixty days after each such date.

"3 *Computations.* The Company shall make the initial computation of the earned premium as determined by this Endorsement as of January 15, 1949 within sixty days thereafter, and shall recompute such earned premiums as

of January 15, 1950 and January 15, 1951, within sixty days after each such date.

"4. *Premium Adjustment.* Premium adjustment shall be made immediately following each computation of the earned premium as determined by this Endorsement based upon the amount of premium as then computed, subject to the minimum and maximum amounts hereinbefore specified, and the amount of premium previously paid to and retained by the Company under this Policy and as provided for in this Endorsement.

"5. *Final Premium.* Final Premium for this Policy shall be the sum of:

"(a) The earned premium as determined in accordance with the provisions of this Endorsement at the time of the third computation as of January 15, 1951, unless further adjustment is requested either by the Company or by the Insured upon notifying the other party within sixty days of the promulgation of the results of such third computation and subject to the further proviso that further computation shall be governed by a like procedure, and

"(b) The earned premiums developed by the application of rates designated by the letter 'E' in such Policy, such premium to be computed in accordance with the provisions of the Policy exclusive of this Endorsement."

The controversy arises over the construction of the following language in the premium computation endorsement:

"In the event of cancellation of the Policy by the Insured the minimum earned premium as determined by this Policy if so canceled shall be equal to the earned standard premium applicable to such Policy.

"For the purpose of computation of the maximum premium as hereinbefore specified any Policy canceled by the Insured or canceled by the Company for non-payment of premium shall be computed pro rata for the period the Policy so canceled was in force and then extended on a pro rata basis for the full twelve months' period."

It will be seen, therefore, that the controversy arises over how to compute that portion of the earned premium which is to be calculated on the total gross earnings after a cancellation of the policy within one year. So far as the disputed issue in this phase of the case is concerned it arises solely due to the fact that in arriving at the amount of $11,130.77, the plaintiff contended and the court sustained its contention that the premium due under the terms of the policy was to be arrived at by computing the gross earnings of the Oklahoma Transportation Company for a period of one year. Under the maximum provision contained in the above referred to premium computation endorsement plaintiff first found the gross earnings for one year and that the annual premium under all the provisions of the policy would be $103,171.94. By this computation the total premium due for the 57 day period was $23,268.66. From this was subtracted the sum of $12,137.89, made up of $1,180.06 and $10,957.83, the amount admittedly paid on the premium by defendant, leaving a balance due of $11,130.77. From this was deducted $3,561.88 for rebates from former years making the total of the judgment rendered $7,568.89.

It is the contention of the Oklahoma Transportation Company that the gross earnings should be arrived at by computing them for the period of 57 days, the time the policy was in force. Plaintiff calls attention to the final paragraph above and argues that this provision specifies a calculation not on the 57 days the policy was in force but based on a period of one year. With this contention we agree. Plaintiff cites and relies upon New York Life Ins. Co. v. Morgan, 187 Okla. 214, 101 P. 2d 826; Continental Casualty Co. v. Goodnature, 170 Okla. 477, 41 P. 2d 77, which announce the rule to the effect that where words used in a policy are susceptible of two constructions the

construction against the insurer will be placed thereon. These cases are not in point. There is no ambiguity in the final paragraph quoted above. It specifically provides for the method used by plaintiff in its calculation when the policy is canceled within the year. The calculation made by plaintiff and approved by the court is correct and is hereby approved.

Defendant's next argument involves the following provision of the policy:

"In the event the Company ceases to be the Insurer for Insured, initial computation of the premium computed in accordance with the provisions of this Endorsement shall be made as of a date six months after the date the Company ceased to be such insurer within sixty days thereafter, and subsequent recomputations of such earned premium shall be made as of dates twelve and twenty-four months after the initial computations, within sixty days after each such date."

In this connection defendant argues plaintiff failed to comply with the terms of this provision and has therefore waived any right to make the calculations under the terms and provisions of the policy providing for the maximum rates upon cancellation within the one year period. The initial computation under the above-quoted provision was due May 10, 1948. Although this computation was not furnished until June 1, 1948, the remaining computations were duly made and there is no contention that the delay in furnishing the required information caused any damage to the defendant. There is no provision for a waiver under such condition either in the policy or in the premium computation endorsement, and there is no other method of calculation provided in the event of the failure to furnish the computation within the period provided in the above-quoted section. The provision is ostensibly for the benefit of both parties. It does not appear that a different calculation would have been made had there been a strict compliance with the above set out provision. It is a cardinal rule of law that

where the party complaining can show no detriment by a failure to comply with an agreement in a contract and no provision is made in the alternative, the claim of detriment must be disallowed.

Finding no error in the judgment of the court, it is affirmed.

HALLEY, V. C. J., and WELCH, CORN, DAVISON, and O'NEAL, JJ., concur.