# BITUMINOUS CASUALTY CORPORATION v. RIVERDALE, INC., et al.—440 S.W. 2d 801

Eastern Section. November 15, 1968.

Certiorari Denied by Supreme Court February 17, 1969.

338

Frank L. Flynn, Sr. and Frank Creekmore, Knoxville, for appellants, Riverdale, Inc. and French Broad Dairy, Inc.

Paul E. Parker and W. P. O'Neil, Knoxville, for appellee, Bituminous Cas. Corp.

COOPER, J. Riverdale, Inc. (formerly the French Broad Ice Cream Company, Inc.) and the French Broad Dairy, Inc. have appealed from a decree of the Chancery Court of Knox County awarding Bituminous Casualty Corporation a judgment of $29,543.62, representing insurance premiums found by the Chancellor to be due

on policies issued by Bituminous for the period of July 1, 1963, to October 31, 1965.

Bituminous issued two policies of insurance to appellants on July 1, 1963, providing coverage for Workmen's Compensation, General Liability, Products Liability and Automobile Liability and Property Damage. Included in the policies, on written election of the appellants, was a "Retrospective Premium Endorsement—Three Year—Plan D." This is a three-year plan under which the insured pays a deposit premium or standard premium on a monthly or quarterly basis and, at the conclusion of each policy year after an audit is made of the insured's vehicles and payrolls, a retrospective premium is determined under a formula set out in the endorsement. The retrospective plan is advantageous to an insured who has had a poor loss experience as it broadens the experience base from one to three years and results in a lower premium if the insured's loss experience during the life of the Retro Plan is good. This was the second such election by the appellants, the first covering the period from July 1, 1960, to July 1, 1963.

The retro endorsement included in the policies issued effective July 1, 1963, contained the statement that:

"It is agreed that this endorsement applies to the policies designated in Table 1 below and renewals thereof, affording insurance with respect to the three year period commencing with the effective date of this policy, * * *" [The policies listed in Table 1 were the Workmen's Compensation (WC 367057) and the Liability Policy (CL 864979)].

The retro endorsement statement was in accord with the letter of election sent Bituminous by the appellants, wherein they stated:

"The undersigned (the appellants) hereby elects and by these presents accepts Retrospective Rating Plan D, effective July 1, 1963, for the 3 year period as part of Policy (ies) WC 367057 CL 864979 including any renewals or rewritings thereof during the period of said Retrospective Rating Plan, issued to the undersigned by Bituminous Casualty Corporation."

As is usual in insurance policies the Retro Plan "D" endorsement included a provision for payment of a higher premium where the insured cancels the policies during the term of the Retro Plan. Specifically the policy provided that:

"*5. Cancelation.*

"The cancelation or non-renewal, prior to the end of the three year period, of any policy designated in Table 1 shall be deemed to be cancelation of the retrospective rating plan, and the premium for insurance subject to Plan D for the period such policies have been in force shall be computed in accordance with the other provisions of this endorsement, provided:

"(a) *Cancelation by the named insured.* In the event of cancelation by the named insured, (1) the standard premium shall be computed as the sum of the audited standard premium for all completed annual periods and the short rate standard premium for the period in which cancelation is effective; the minimum retrospective premium shall be the standard premium so computed; (2) in computing the maximum retrospective premium, the standard premium shall be computed as the sum of the

audited standard premium to the date of cancelation and the estimated standard premium from the date of cancelation to the end of the three year period.

"(b) *Cancelation by the company*. In the event of cancelation by the company because of non-payment of premium by the named insured, the maximum retrospective premium shall be computed on the basis of the audited standard premium from the beginning of the three year period to the date of cancelation and the estimated standard premium for the balance of the three year period."

"(c) *Cancelation of part of insured's operations*. Neither the insured nor the company may cancel the insurance applying to a part of the operations of the insured."

Renewal policies and/or certificates were issued by Bituminous at the beginning of each annual period during the life of the retroactive plan, and each such renewal included the Retrospective "Plan D" short form endorsement and a reference to the form on the face of the policy. Bituminous also gave notice to the Workmen's Compensation Division of the State of Tennessee at the beginning of each annual policy period that appellants had workmen's compensation coverage. The last such notice was dated June 30, 1965, and was received in the state office on July 2, 1965.

The renewal policies and/or certificates issued by Bituminous for the period July 1, 1965, to July 1, 1966, were forwarded to the "agents of record" designated by appellants by letter dated June 17, 1964. The agents did not deliver the policies to the appellants, but retained them in their office files. In explanation, the agents testi-

fied they were awaiting the completion of the annual audit so they could discuss insurance matters fully with appellants' new office manager and could review the audit with him. There was credibile evidence that the agents' action was in accord with the procedure followed by the parties during the five years Bituminous had insured appellants' business operation under the Retro Plan. In any event, the appellants made no request for the delivery of the policies, but continued to make policy-required monthly payroll reports to Bituminous after July 1, 1965, gave notice of equipment purchases, and filed numerous workmen's compensation and automobile liability claims with Bituminous's resident adjuster. The claims, some 17 in number, were accepted and processed by Bituminous without question. The last such claim was reported to Bituminous on October 26, 1965.

The appellants, by letter date October 29, 1965, instructed the agents of record "to cancel all our coverages on the French Broad Dairy and also the French Broad Ice Cream Company as of October 30, 1965. We have secured this same coverage from another source."

On receipt of the notice of cancellation, the agents contacted appellants immediately to inquire as to the cause of the cancellation and to call appellants' attention to the fact that cancellation within the term of the Retro Plan "D" would result in the payment of a higher premium. At this time the appellants indicated they were fearful they had no insurance coverage as they did not have the policies for the period July 1, 1965, to July 1, 1966, in their possession.

The Chancellor expressly pointed out in his memorandum that "everything in this record, without exception," reflects the knowledge of the appellants that

they had insurance in force for the policy period beginning July 1, 1965, and also noted that appellants never made any request of the agents to deliver the policies sent them by Bituminous before canceling the insurance coverage. To this, we would add that in our opinion the preponderance of the evidence shows the retention of the policies by the agents was with the knowledge of appellants' office manager who was charged by appellants with the responsibility of keeping abreast of insurance matters. The Chancellor concluded that under these circumstances, "the failure to have in the possession of the parties the policies in question gave no * * * cause to the defendants to avoid payment of insurance premiums by the terms of the policy which was in force."

The Chancellor, finding "no reason that gives the [appellants] the right to avoid the requirements set out in the cancellation clause," entered a decree for premium due under the policy provision governing cancellation by the insured.

██ We concur in the Chancellor's findings and in his conclusions based on those findings.

██ The appellants argue that the Chancellor was in error in computing the premium due under the Retrospective Plan "D" endorsement as the provisions for computation were not set forth "within the four corners of the policies" issued after July 1, 1963. We see no merit in this insistence. The formula for computing the retrospective premium and the necessary factors entering into the computation were set out in detail in the Workmen's Compensation policy issued appellants on July 1, 1963, (Policy #WC 367057), and were referred to in the Retrospective endorsement in the liability policy

issued the same day. Subsequent renewals of both policies included a Retrospective Plan D shortform endorsement wherein it was agreed specifically that the "premium for the policy shall be computed in accordance with the provisions of the Retrospective Premium Endorsement-Plan (D) forming a part of policy WC 367057." This, we think, was sufficient to make the detailed method of computation of the retrospective premium a part of the renewal policies.

■ "Where an executed agreement refers to other documents and make their conditions part of the executed agreement, the documents must be interpreted together as the agreement of the parties." Engert v. Peerless Insurance Company, 53 Tenn. App. 310, 382 S.W.2d 541, 547, and cases there cited.

Complaint is also directed to the computation of the premium due on the policies under the Retrospective-Plan (D) endorsement on the ground that it had the effect of imposing an unconscionable penalty upon the appellants.

■ Agreements in insurance policies for the payment of a higher short rate premium on cancelation by an insured have been consistently upheld by the courts. See Couch on Insurance, (2nd Edition), Section 30.33; Appelman's, Insurance Law and Practice, Section 4231; 45 C.J.S. Insurance Section 460, p. 122. Where the right of cancelation exercised by the insured is derived from an insurance contract, the premium liability upon such cancelation is to be measured by the same instrument. See Oklahoma Transp. Co. v. Hartford Accident & Indemnity Co., 206 Okl. 603, 245, P.2d 717; Port Iron & Supply Co. v. Moore, Tex.Civ.App., 153 S.W.2d 319;

Anchor Casualty Co. v. Inland Motor Freight, Inc., 97 F.Supp. 841, 843; Couch on Insurance (2nd Edition), Section 30.33.

The computation of the premium due in this case was admittedly in accord with the contract between the parties and was correctly computed.

■ The remaining assignment of error is directed to the Chancellor's finding that the acceptance by the insurance agent of a check dated March 9, 1965, and bearing the notation ''in full settlement of invoice covering insurance—1965'' was not an accord and satisfaction, of the retrospective premium. We think the preponderance of the evidence shows, as found by the Chancellor, that the check was given in payment and settlement of a disputed ''monthly premium deposit'' billing and was not intended to be and was not accepted as payment of the retroactive premium.

The decree of the Chancellor is affirmed. Costs incident to the appeal are adjudged against the appellants and their sureties.

McAmis, P.J. and Parrott, J., concur.