2009 OK 27

Steve CRUTCHFIELD,
Plaintiff/Garnishor/Appellee,

v.

MARINE POWER ENGINE
COMPANY, Defendant,

and

Tige Boats, Inc., Garnishee/Appellant,

and

Marine Power Holding, L.L.C., Appellant.

No. 103,342.

Supreme Court of Oklahoma.

May 5, 2009.

Steven R. Hickman, Tulsa, OK, for Plaintiff/Appellee.

· Joe M. Fears, Tulsa, OK, for Defendants/Appellants.

KAUGER, J.:

¶1 The first impression issue presented is whether Marine Power Holding, L.L.C. (MP Holding), a successor company once-removed from Marine Power Engine, Inc. (MP Engine), is liable for a judgment taken against MP Engine. As a general rule, when one company sells or otherwise transfers all its assets to another company, the successor is not liable for the debts and liabilities of the seller. There are exceptions to the rule. In *Pulis v. United States Elec. Tool Co.*, 1977 OK 36, ¶5, 561 P.2d 68, we delineated the exceptions as being applicable when:

1) an agreement exists to assume such debts or liabilities;

2) the corporations are consolidated or merged;

3) the transaction was fraudulent; or

4) the purchasing corporation is a mere continuation of the selling company.

The trial court found that the mere continuation exception was applicable and that MP Holding was liable for the judgment. For the "mere continuation" exception, the test is not whether there is a continuation of business operations, but whether there is a continuation of the corporate entity. We hold that: 1) in order to establish the liability of a successor corporation once-removed, each corporation along the chain of succession must meet a *Pulis* exception to liability; 2) because there was insufficient evidence of a continuation of the corporate entity along the chain of corporate succession, the trial court erred by finding that MP Holding was a

"mere continuation" of MP Engine; 3) 12 O.S. Supp.2002 § 1190(B)(1) does not provide for an award of attorney fees and costs to a putative judgment debtor in a trial of a garnishment action; and 4) as prevailing garnishee, Tige is entitled to an award of reasonable attorney fees incurred at trial and on appeal and an award of costs incurred at trial.

## FACTS

¶ 2 On February 1, 1996, Steve Crutchfield (Crutchfield) was hired as vice-president of sales by MP Engine, a manufacturer of boat engines domiciled in Ponchatoula, Louisiana. Crutchfield's employment contract designated his employer as Marine Power Engine Company, a name under which MP Engine did business. MP Engine was incorporated in 1984.[1] See the attached exhibit for a timeline delineating the events in this cause.

¶ 3 Crutchfield's employment contract was signed by Walter E. Allbright, Jr. (Allbright), president and sole director of MP Engine. In February 1997, MP Engine's assets were purchased in exchange for stock by Hirel Holdings, Inc. (Hirel). Hirel was a publicly-held Delaware corporation traded on the NASDAQ exchange and based in Pompano Beach, Florida.[2] Hirel wholly owned several subsidiaries, including Hirel Technologies, Inc., a Florida-based producer of boat engines. Hirel planned to continue building engines at the Louisiana facility using Hirel's patented multi-port fuel injection system. MP Engine continued to exist as a corporate entity, but ceased doing business and retained no assets. Allbright continued to manage operations in Louisiana. He was not named an officer or director of Hirel, but instead reported to Hirel management in Florida.

¶ 4 On July 1, 1997, as a result of Hirel's new sales priorities, Crutchfield was terminated, and his employer agreed to pay him four months severance, including payment for medical insurance and outstanding expenses. On November 7, 1997, Crutchfield, a resident of Oklahoma, filed a petition in Delaware County District Court alleging that he was owed $10,163.97 in unreimbursed expenses and unpaid medical insurance premiums. Marine Power Engine Company, Hirel, and Allbright were named as defendants. On April 4, 1998, the trial court dismissed Hirel and Allbright as defendants for lack of personal jurisdiction.

¶ 5 At some time in late 1997, Hirel notified Allbright that it was approaching insolvency. In order to preserve operations, Allbright located John Benton Smallpage, Jr. (Smallpage), an investor. Smallpage formed MP Holding to purchase certain of Hirel's assets. On December 31, 1997, MP Holding agreed to pay $300,000 in cash and assume $2.4 million of Hirel's liabilities in order to purchase the engine manufacturing operation in Louisiana, facilities in California, Washington, and New Jersey, several accounts receivable, and the rights to several trademarks, copyrights, and patents. MP Holding expressly declined to assume any of Hirel's liabilities other than those catalogued in the purchase agreement.[3] MP Holding did not purchase all of Hirel's assets, although it is unclear from the record whether Hirel continued to exist and operate with the assets it retained.[4] Smallpage was the majority shareholder in MP Holding and was named manager. Allbright was named president of MP Holding. MP Holding's corporate charter provides that the corporation is domiciled in Harahan, Louisiana, a town located roughly 45 miles away from the manufacturing operation in Ponchatoula.

---

1. The company was originally called WJA, Inc., and founded at some time in the 1950s. In 1984, the company was incorporated in Louisiana as Marine Power I, Inc., and in 1992, its name was changed to Marine Power Engine, Inc.

2. Hirel Holdings, Inc. was traded in the NASDAQ market under the symbol HIRL.

3. The schedule of liabilities totaled $2,418,475.21. See Purchase and Sale Agreement, Record, p. 76–77, 89–97. The judgment against MP Engine could not have been included in the schedule of liabilities because it was not entered until 2001—four years after the sale.

4. The only mention of Hirel's continued existence after the sale was an oblique sentence in MP Holding's Motion to Reconsider, Record, p. 33, which it repeated in its Brief in Chief, p. 12. MP Holding stated: "There was no evidence introduced that Hirel ceased to exist after the asset purchase by MPH."

¶ 6 On April 3, 2001, Marine Power Engine Company made an offer of judgment to Crutchfield in the amount of $10,163.47. Crutchfield accepted the offer without amendment, and on April 11, 2001, the trial court entered the agreed judgment.

¶ 7 On August 15, 2005, Crutchfield filed a garnishment affidavit against Tige Boat, Inc. (Tige) and Marine Power Engine Company. Tige, a customer of MP Holding, owed MP Holding approximately $20,000. MP Holding filed an answer on August 15, 2005, and Tige filed an answer on August 17, 2005. Each corporation argued that it owed no money to Crutchfield. Crutchfield filed an election to take issue with each answer, and a hearing was held on December 7, 2005. At the hearing, the trial court found that because it was a mere continuation of MP Engine, MP Holding was liable for the judgment and Tige was liable as garnishee. The trial court also awarded $600 in attorney fees to Crutchfield. On February 7, 2006, the final garnishment order was filed, and MP Holding and Tige filed a joint motion to reconsider.[5] On April 18, 2006, the trial court recast the motion to reconsider as a motion for a new trial and denied the motion.[6] MP Holding and Tige filed a joint petition in error on May 12, 2006.

¶ 8 The cause was assigned to the Court of Civil Appeals on December 18, 2006. On March 9, 2007, the Court of Civil Appeals reversed the findings of the trial court and remanded the cause. In its opinion, the Court of Civil Appeals determined that: 1) the evidence did not support that MP Holding was a mere continuation of MP Engine; 2) although MP Holding was entitled to an award of attorney fees and costs incurred at trial, it was not entitled to an award of appeal-related attorney fees and costs.

¶ 9 On March 29, 2007, Crutchfield filed a petition for certiorari. Later that same day, MP Holding and Tige filed a motion with the Court of Civil Appeals to reconsider the denial of appeal-related attorney fees and costs. On April 4, 2007, we issued an order recasting the motion to reconsider as a petition for rehearing in the Court of Civil Appeals.[7] On April 24, 2007, the Court of Civil Appeals granted rehearing and issued an order granting MP Holding and Tige's request for an award of appeal-related attorney fees and costs. On May 1, 2007, Crutchfield filed an amended petition for certiorari that included an objection to the award of appeal-related attorney fees and costs. We granted certiorari on September 10, 2007. The cause was assigned to this office on January 7, 2009.

¶ 10 In a garnishment action, when a judgment creditor takes issue with a garnishee's answer, the issue stands for trial as a civil action and is in the nature of an equitable proceeding.[8] When reviewing an action in equity, we cannot make original findings of fact, and whenever necessary findings are absent, the cause must be remanded with

---

5. MP Holding and Tige actually filed their motion to reconsider on January 23, 2008—after the pronouncement of the judgment, but before the final garnishment order was filed. However, 12 O.S.2001 § 653(C) provides:

> A motion for new trial filed after the announcement of the decision on all issues in the case but before the filing of the judgment or decree shall be deemed filed immediately after the filing of the judgment or decree.

Therefore, MP Holding's motion is deemed to have been filed on February 7, 2006.

6. The meaning and effect of an instrument filed in court depends on its contents and substance rather than on form or title given it by the author. *Whitehorse v. Johnson*, 2007 OK 11, ¶ 8 fn. 13, 156 P.3d 41.

7. Oklahoma Supreme Court Rule 1.777(A), 12 O.S. Supp.2005, App. 1, provides in pertinent part:

> A party who is aggrieved by a decision of the Court of Civil Appeals may file one petition for rehearing combined with brief in its support. . . .

8. Title 12 O.S.2001 § 1177 provides in pertinent part:

> The answer of the garnishee shall in all cases be conclusive of the truth of the facts therein stated, with reference to the garnishee's liability to the defendant unless the judgment creditor shall within twenty (20) days from the receipt of the garnishee's answer, from the date of the deposition of the garnishee, or from receipt of the garnishee's answers to interrogatories, whichever is later, serve upon the garnishee or the garnishee's attorney of record personally or by certified mail, return receipt requested, a notice in writing that the judgment creditor elects to take issue with the garnishee's answer; in which case, the issue shall stand for trial as a civil action in which the affidavit on the part of the judgment credi-

directions that they be made.[9] However, if the record is sufficient, we will render that decree which the trial court should have entered.[10]

## I.

¶ 11 IN ORDER TO ESTABLISH THE LIABILITY OF A SUCCESSOR CORPORATION ONCE–REMOVED, EACH CORPORATION ALONG THE CHAIN OF SUCCESSION MUST MEET AN EXCEPTION TO THE GENERAL RULE OF NON–LIABILITY.

¶ 12 As a general rule, when one company sells or otherwise transfers all its assets to another company, the successor is not liable for the debts and liabilities of the seller.[11] The four exceptions to this rule are when:

1) there is an agreement to assume such debts or liabilities;
2) there is a consolidation or merger of the corporations;
3) the transaction was fraudulent in fact; or
4) the purchasing corporation is a mere continuation of the selling company.[12]

In *Collinsville Nat. Bank v. Esau,* 1918 OK 535, ¶ 20, 176 P. 514, we described the situation these exceptions were crafted to prevent:

Can parties managing a corporation contract debts and obligations in its name, then by some legerdemain of high financing denude the corporation of all its property and assets by transferring them to a new corporation which the same parties manage, and thereby render it powerless to pay under the mere guise of a sale? Under such circumstances, A. controlled the corporation, the corporation owed the debt; but by the transfer A. still controls the corporation, but the corporation owes no debts, therefore A. owes nothing. The law has no toleration for such jugglery. It is a fraud both in fact and in law.

¶ 13 This cause differs from our prior decisions on successor liability because MP Holding is a successor once-removed from MP Engine. The liability of a once-removed successor corporation is an issue of first impression,[13] and very few sister courts have addressed the issue. In *United States v. Iron Mountain Mines, Inc.,* 987 F.Supp. 1233, 1235 (E.D.Cal.1997), an action seeking to recover the costs of investigating and abating contamination by hazardous materials, the court found that there must be a showing that each corporation occupied the chain of succession and met an exception to the general rule of non-liability. In *Goucher v. Parmac, Inc.,* 1984 OK CIV APP 46, ¶ 7, 694 P.2d 953, a products liability action, our Court of Civil Appeals found that exceptions to the general rule of non-liability for successor corporations also apply to successor corporations once-removed.

■ ¶ 14 According to the teaching of *Collinsville Nat. Bank, supra,* the exceptions to the general rule of successor non-liability exist to prevent the shareholders, officers,

tor shall be deemed the petition and the garnishee's answer the answer thereto.... *Nogales Avenue Baptist Church v. Peyton,* 1978 OK 36, ¶ 6, 576 P.2d 1164; *Moral Ins. Co. v. Steves,* 1953 OK 162, ¶ 4, 257 P.2d 836.

9. *Hedges v. Hedges,* 2002 OK 92, ¶ 23, 66 P.3d 364; *Larman v. Larman,* 1999 OK 83, ¶ 18, 991 P.2d 536; *In re Matter of Bartlett,* 1984 OK 9, ¶ 19 fn. 13, 680 P.2d 369.

10. *Larman v. Larman,* see note 9, supra; *Fed. Nat'l Mortgage Ass'n v. Walter,* 1961 OK 172, ¶ 0, 363 P.2d 293; *Schock v. Fish,* 1914 OK 591, ¶ 0, 144 P. 584.

11. *Pulis v. United States Elec. Tool Co.,* 1977 OK 36, ¶ 5, 561 P.2d 68; *Coline Oil Corp. v. State,* 1939 OK 173, ¶ 0, 88 P.2d 897; *First State Bank of Mangum v. Lock,* 1925 OK 304, ¶ 25, 237 P. 606; *Burkholder v. Okmulgee Coal Co.,* 1921 OK 84, ¶ 0, 196 P. 679; *Ezzard v. State Nat'l Bank,* 1916 OK 471, ¶¶ 13–14, 157 P. 127.

12. *Pulis v. United States Elec. Tool Co.,* see note 11, supra; *Coline Oil Corp. v. State,* see note 11, supra; *First State Bank of Mangum v. Lock,* see note 11, supra; *Burkholder v. Okmulgee Coal Co.,* see note 11, supra; *Ezzard v. State Nat'l Bank,* see note 11, supra. *See Golden State Bottling Co., Inc. v. N.L.R.B.,* 414 U.S. 168, 182 fn. 5, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973).

13. *Goucher v. Parmac, Inc.,* 1984 OK CIV APP 46, ¶ 7, 694 P.2d 953, addressed this issue. However, *Goucher* was an opinion released for publication by the Court of Civil Appeals. Opinions released for publication by order of the Court of Civil Appeals are persuasive only and lack precedential effect. Rule 1.200(c)(2), Supreme Court Rules, 12 O.S.2001, App. 1; 20 O.S.2001 §§ 30.5, 30.14.

and directors of a corporation from eluding its debts and liabilities while maintaining control over its assets. We hold that to determine the liability of a once-removed successor corporation, a court must make a finding that each company along the line of succession met one of the four exceptions to non-liability set out in *Pulis v. United States Elec. Tool Co.*, 1977 OK 36, ¶ 5, 561 P.2d 68. In the instant cause, Crutchfield is required to show that the sale of MP Engine's assets to Hirel, together with the sale of Hirel's assets to MP Holding, resulted in a mere continuation of MP Engine.

## II.

¶ 15 BECAUSE CRUTCHFIELD DID NOT ESTABLISH A CONTINUATION OF THE CORPORATE ENTITY ALONG THE CHAIN OF SUCCESSION FROM MP ENGINE TO MP HOLDING, THE TRIAL COURT ERRED BY FINDING THAT THE MERE CONTINUATION EXCEPTION WAS APPLICABLE TO MP HOLDING.

■ ¶ 16 Crutchfield argues that MP Holding is liable for the judgment against

MP Engine because MP Holding is a mere continuation of MP Engine. MP Holding argues that it is not and that it is not liable for the judgment. Crutchfield did not allege that any exception other than "mere continuation" was applicable.

■ ¶ 17 The mere continuation exception covers a re-organization of a corporation.[14] For this exception, the test is not whether there is a continuation of business operations, but whether there is a continuation of the corporate entity.[15] To make this determination, we have looked to whether there is a common identity of directors, officers, and stockholders before and after the sale, whether there was good consideration for the sale, and whether the seller corporation continues to exist in fact.[16] The bare *de jure* existence of the seller corporation after the sale is insufficient alone to establish that the successor corporation is not a mere continua-

14. *Pulis v. United States Elec. Tool Co.*, see note 11, supra at ¶ 9.

15. *Pulis v. United States Elec. Tool Co.*, see note 11, supra at ¶ 9.

16. *Pulis v. United States Elec. Tool Co.*, see note 11, supra at ¶ 9 (no shared directors, officers, or shareholders and no lack of consideration for sale, but because of a lack of evidence whether the seller corp. existed after the sale, summary judgment to successor corp. was improper); *Coline Oil Corp. v. State*, see note 11, supra at ¶ 11 (not mere continuation or merger—same directors and shareholders and lack of consideration, but predecessor kept assets and continued doing business); *Oklahoma Title Co. v. Burrus*, 1935 OK 495, ¶ 17, 44 P.2d 852 (successor was a mere continuation—same location, same assets, no consideration, same shareholders); *First State Bank of Mangum v. Lock*, see note 11, supra (for mere continuation, look for fraud or continued existence of predecessor company); *Riegel v. Planters' State Bank*, 1924 OK 303, ¶ 17, 227 P. 105 (for mere continuation, look for fraud, common identity of directors and shareholders, lack of consideration); *Burkholder v. Okmulgee Coal Co.*, see note 11, supra at ¶ 5 (sale was for consideration, so no merger, fraud, or mere continuation); *Collinsville Nat. Bank v. Esau*, 1918 OK 535, ¶¶ 17–19, 176 P. 514 (constructive merger—no continued existence of predecessor company,

same assets, same directors and shareholders, no consideration); *Skirvin Operating Co. v. Southwestern Elec. Co.*, 1918 OK 503, ¶ 13, 174 P. 1069 (successor was organized for purpose of taking over predecessor, same officers and stockholders, lack of consideration, merger and continuation in fact, done to evade liabilities, therefore successor was liable); *Ezzard v. State Nat'l Bank*, see note 11, supra (look to whether there was consideration and good faith); *Union Coal Co. v. Wooley*, 1915 OK 992, ¶ 11, 154 P. 62 (if no consolidation or merger, look to see if sale is for consideration and good faith).

In many states that employ the mere continuation exception, the common identity of directors, officers, and shareholders is the most important factor. *See Travis v. Harris Corp.*, 565 F.2d 443, 447 (7th Cir.1977)(under Indiana law, indicia are common identity of stock, directors, stockholders and existence of only one corporation after sale); *Wallace v. Dorsey Trailers Southeast, Inc.*, 849 F.2d 341, 343 (8th Cir.1988)(under Missouri law, key factor is common identity of incorporators, directors, officers, and stockholders); *Cilurso v. Premier Crown Corp.*, 769 F.Supp. 372, 374 (M.D.Ga.1991)(under Georgia law, need identity of ownership between seller corp. and purchasing corp.); *Hoover v. Recreation Equip. Corp.*, 792 F.Supp. 1484, 1494–1495(N.D.Ohio 1991)(under Ohio law, common officers and directors, whether all assets were purchased, and

tion of the seller company.[17]

¶ 18 Our decision in *Pulis v. United States Elec. Tool Co.*, 1977 OK 36, 561 P.2d 68, which addressed the mere continuation exception, is instructive. *Pulis* was a products liability action in which the plaintiff sued United States Electrical Tool Company (U.S. Tool) on a theory of successor liability. A group of investors had set out to form a manufacturing company, but when they discovered that U.S. Tool was for sale, the group purchased a portion of its assets. These assets included materials, equipment, records, patents, and the company's name. The old company continued to exist under a new name, Fort Mitchell Tool Company. It was undisputed that the successor U.S. Tool had never manufactured the type of tool that injured the plaintiff, but that its predecessor of the same name had manufactured the tool which caused the injury. The trial court granted summary judgment to U.S. Tool on the issue of successor liability. We held that the trial court erred by granting summary judgment because the record was too bare of facts which demonstrated that the predecessor maintained more than a *de jure* existence. We specifically noted the lack of any of the following facts in the record concerning the predecessor corporation after the sale: the makeup of its management and ownership; the number of its employees; its location; the extent of its assets and business activities; and the duration of its existence.[18]

¶ 19 In the instant cause, there were no disputed facts at trial. Crutchfield offered the following evidence to show that Hirel was a mere continuation of MP Engine. He produced a facsimile transmission sent from the facility in Louisiana in July 1997 (five months after MP Engine's assets were purchased by Hirel) that still carried the name "Marine Power, Inc." in the embedded header. He offered a severance check from October 1997 that identified the employer as "Marine Power, Inc." He obtained testimony from Allbright that despite its continued existence, MP Engine "... did not operate after Hirel bought the assets."[19] It was undisputed that

whether seller corp. was dissolved); *CenterPoint Energy, Inc. v. Superior Court*, 157 Cal.App.4th 1101, 69 Cal.Rptr.3d 202, 219 (2007)(key factors are adequate consideration for sale and identity of officers, directors, and shareholders); *Vernon v. Schuster*, 179 Ill.2d 338, 228 Ill.Dec. 195, 688 N.E.2d 1172, 1176 (1997)(test is whether there is a continuation of business entity, look to identity of officers, directors, and stock of selling and purchasing corporations, identity of ownership is a requirement); *Grundmeyer v. Weyerhaeuser Co.*, 649 N.W.2d 744, 751–752 (Iowa 2002)(controlling factor is whether the transferor controls the purchasing corp.); *Stratton v. Garvey Int'l, Inc.* 9 Kan.App.2d 254, 676 P.2d 1290, 1292 (1984)(factors are: 1) common identity of officers, shareholders, personnel, and operations; 2) lack of adequate consideration, and 3) dissolution and insolvency of seller corp.); *McCarthy v. Litton Indus., Inc.*, 410 Mass. 15, 570 N.E.2d 1008, 1012–1013 (1991)(key factors are is continued existence of seller corp. and continuity of directors, officers, and stockholders); *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 99 (Minn. 1989)(must show continuity of corporate entity by showing common identity of directors, shareholders, and stock); *Timmerman v. American Trencher, Inc.*, 368 N.W.2d 502, 503 (Neb.1985)(commonality of officers, directors, or shareholders is a more important consideration than continuity of operations); *Garcia v. Coe Mfg. Co.*, 123 N.M. 34, 933 P.2d 243, 247 (1997)(continuity of officers, directors, or shareholders is most important factor, followed by adequacy of consideration for the sale and con-

tinued existence of seller corp.); *Hamaker v. Kenwel–Jackson Mach., Inc.*, 387 N.W.2d 515, 518–519 (S.D.1986)(continuity of officers, directors, or shareholders is most important factor); *Taylor v. Atlas Safety Equip. Co., Inc.*, 808 F.Supp. 1246, 1251–1252 (E.D.Va.1992)(continuity of corporate entity is most important, look to identity of officers, directors, and shareholders); *Smith v. Meadows Mills, Inc.*, 60 F.Supp.2d 911, 917–918 (E.D.Wis.1999) (continuity of officers, directors, and shareholders most important). *But see Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 650 (5th Cir.2002)(under Florida law, mere continuation when purchasing corp. is a "new hat" for seller corp., look to identity of assets, location, management, personnel, stockholders); *Case v. Paul Troester Maschinenfabrik*, 139 F.Supp.2d 428, 432–433 (W.D.N.Y.2001)(factors are identity of personnel, facilities, location, and name, continued production, same assets and operations, and held itself out to public as former enterprise); *Savage Arms, Inc. v. Western Auto Supply Co.*, 18 P.3d 49, 55 (Alaska 2001)(factors are continued use of seller's name, location, employees, and common identity of shareholders and directors).

**17.** *Pulis v. United States Elec. Tool Co.*, see note 11, supra at ¶ 10.

**18.** *Pulis v. United States Elec. Tool Co.*, see note 11, supra at ¶¶ 1–13.

**19.** Testimony of Walter Allbright, December 7, 2005, Record, p. 44.

the sale of MP Engine's assets was made for adequate consideration, and that MP Engine and Hirel had no common officers or directors. However, it is unclear from the record whether Allbright was the only stockholder with a common identity.

■ ¶ 20 As to whether MP Holding was a mere continuation of MP Engine through Hirel, Crutchfield noted that MP Holding used the same phone number at the Louisiana facility as did Hirel. He demonstrated that MP Holding used a website that had been developed by MP Engine. He showed that MP Holding filled outstanding orders for engines that had been placed with Hirel. He also showed that MP Holding uses the trade name "Marine Power," advertises based on the goodwill attendant to the "Marine Power" brand, and retains copyrights originally acquired by MP Engine. Hirel and MP Holding had entirely different officers and directors. However, it is unclear from the record whether there were any shareholders with a common identity. The parties agreed that Hirel retained some assets after the sale, but it is unclear from the record how long and to what extent Hirel continued to exist after the sale.

¶ 21 The court relied on two pieces of evidence in making its ruling: 1) MP Holding used a copyright that had been originally obtained by MP Engine; and 2) MP Holding used a website which had been developed by MP Engine.[20] The Court pronounced:

> Now, I do have your evidence that says that you changed corporate entities, but yet to the general public, or at least to this Court, you're still using the same information and you're basically even representing

that you are the same in what they own . . .

It is clear that the trial court emphasized continuation of business operations over continuation of the corporate entity. The majority of the evidence presented by Crutchfield—that MP Holding used facilities, equipment, trademarks, copyrights, and goodwill which it purchased from Hirel and which Hirel had previously purchased from MP Engine—was entered to establish the continuation of business operations, but it did not speak to the question of whether there was a continuation of the corporate entity. The trial court erred on a question law by incorrectly applying the *Pulis* standard for mere continuation successor liability.

¶ 22 It was demonstrated that MP Engine, Hirel, and MP Holding had no common directors or officers.[21] There was no showing whether there were any common shareholders.[22] It was undisputed that neither MP Engine nor Hirel sold assets for inadequate consideration. There was evidence that MP Engine maintained only a *de jure* existence after the sale of all of its assets. It was undisputed that Hirel did not sell all of its assets to MP Holding, but it was unclear how long and to what extent Hirel continued to exist or operate after the sale. This was insufficient evidence upon which to make a determination that the corporate entity of each successor corporation was a mere continuation of its predecessor.

¶ 23 The trial court erred by finding that MP Holding was a mere continuation of the corporate entity of MP Engine. We reverse

20. Honorable Robert G. Haney, Transcript of Garnishment Hearing, December 7, 2005, pp. 25–26 provides in pertinent part:

> THE COURT: Well, it appears to me from the information that I have been given, specifically everything that you have or that your company is using on the web site, it appears that you're still doing business or at least using Marine Power, Inc. That gives this Court basically a continuation of the formal corporation. Now, I do have your evidence that says that you changed corporate entities, but yet to the general public, or at least to this Court, you're still using the same information and you're basically even representing that you are the same in what they own, i.e., the trademark of Marine

> Power being owned by Marine Power, Inc., is what you put on your web site. . . . So at this point in time I am going to find that based upon the evidence that I have, that the judgment creditor will be allowed to proceed on against Marine Power, LLC, if that is now the proper name. . . .

21. Allbright was the sole officer and director of MP Engine, and was an officer of MP Holding, but was neither an officer nor a director of Hirel.

22. It was shown that Allbright was a shareholder in MP Engine and Hirel, but not whether he was a shareholder in MP Holding.

the order denying MP Holding's motion to reconsider and vacate the judgment on garnishment.

## III.

**¶ 24 MP HOLDING IS NOT ENTITLED TO AN AWARD OF REASONABLE ATTORNEY'S FEES AND COSTS PURSUANT TO 12 O.S. SUPP.2002 § 1190(B)(1).**

¶ 25 MP Holding and Tige requested an award of attorney's fees and costs incurred at trial and on appeal should they prevail. Crutchfield argues that even if MP Holding prevails, it is not entitled to an award of attorney fees and costs incurred at trial under 12 O.S. Supp.2002 § 1190 [23] because it is not a garnishee. MP Holding responds that because it was entitled to defend the proceedings against Tige, it is the prevailing party and entitled to such an award. It is a question of first impression whether a putative judgment debtor who successfully defends a garnishee is entitled to an award of reasonable attorney's fees and costs under § 1190.

¶ 26 Oklahoma follows the American Rule concerning the recovery of attorney fees.[24] It provides that each litigant pay for legal representation and that courts are without authority to assess attorney fees in the absence of a specific statute or contract.[25] Exceptions to this rule are narrowly defined because attorney fee awards against the non-prevailing party have a chilling effect on open access to the courts.[26] For an award of attorney fees to be authorized under a particular statute, the authorization must be found within the strict confines of the statute.[27] Exceptions to the American Rule are usually crafted to encourage the conservation of judicial resources by promoting settlement and discouraging unnecessarily protracted litigation or frivolous claims.[28]

23. Title 12 O.S. Supp.2002 § 1190 provides:

A. A garnishee may deduct a fee of Ten Dollars ($10.00) from the funds of the defendant in the garnishee's possession as reimbursement for costs incurred in answering. If the garnishee is not indebted to the defendant and the garnishee's answer evidencing that is filed and mailed or delivered to the judgment creditor or to the judgment creditor's attorney of record, the garnishee may assess the judgment creditor a fee of Ten Dollars ($10.00) as reimbursement for such costs.
B. 1. In case of the trial of any issue between the judgment creditor and any garnishee, costs shall be awarded to the judgment creditor and against the garnishee, in addition to the garnishee's liability, if the judgment creditor recovered more than the garnishee admitted by the garnishee's answer; and if the judgment creditor does not, the garnishee shall recover costs from the judgment creditor. The costs shall include a reasonable attorney's fee to be taxed in favor of the prevailing party.
2. In the case of the trial to determine the amount to be recovered for due and owing child support, where any liability on the part of the garnishee is disclosed, costs shall be awarded to the judgment creditor and against the defendant, including a reasonable attorney's fee.
C. In all other cases under this article not expressly provided for, the court may, in its discretion, award costs in favor of or against any party.
D. In addition to sums otherwise due pursuant to a judgment, a judgment creditor, if represented by an attorney, shall be entitled to an attorney's fee of Fifty Dollars ($50.00) for prosecuting a garnishment pursuant to subparagraphs b, c, and d of paragraph 2 of subsection B of Section 1171 of this title, and an attorney's fee of One Hundred Dollars ($100.00) for prosecuting a garnishment pursuant to subparagraph e of paragraph 2 of subsection B of Section 1171 of this title, not to exceed a total of One Hundred Fifty Dollars ($150.00) in any twelve-month period.

24. *Stump v. Cheek,* 2007 OK 97, ¶ 13, 179 P.3d 606; *Whitehorse v. Johnson,* see note 6, supra at ¶ 12; *Head v. McCracken,* 2004 OK 84, ¶ 14, 102 P.3d 670.

25. *Stump v. Cheek,* see note 24, supra; *Whitehorse v. Johnson,* see note 6, supra at ¶ 12; *State ex rel. Tal v. City of Okla. City,* 2002 OK 97, ¶ 16, 61 P.3d 234.

26. *Stump v. Cheek,* see note 24, supra; *Whitehorse v. Johnson,* see note 6, supra at ¶ 12; *Head v. McCracken,* see note 24, supra.

27. *Stump v. Cheek,* see note 24, supra; *Boston Avenue Mgmt., Inc. v. Associated Res., Inc.,* 2007 OK 5, ¶ 12, 152 P.3d 880; *Fulsom v. Fulsom,* 2003 OK 96, ¶ 8, 81 P.3d 652.

28. *Boston Avenue Mgmt., Inc. v. Associated Res., Inc.,* see note 27, supra at ¶ 13; *Robert L. Wheeler, Inc. v. Scott,* 1991 OK 95, ¶ 20 fn. 11, 818 P.2d 475; *Hicks v. Lloyd's Gen. Ins. Agency, Inc.,* 1988 OK 97, ¶ 6, 763 P.2d 85.

¶ 27 If an exception requires interpretation, it may be read in context with other parts of the statute and with the law in effect at the time of its enactment.[29] Where possible, we will not construe statutes to reach an absurd or inconsistent result.[30] In order to avoid judicially imposing a different meaning from that the Legislature intended, we will not place a strained construction on the plain words of a statute.[31]

¶ 28 Section 1190(B)(1) contains an exception to the American Rule.[32] It provides that, in a trial of a garnishment action, if a judgment creditor recovers more than a garnishee had admitted in its answer, the judgment creditor shall be awarded reasonable attorney's fees and costs as the prevailing party. Otherwise, the garnishee shall be awarded reasonable attorney's fees and costs as the prevailing party. Crutchfield argues that because MP Holding is a putative judgment debtor, and not a garnishee, it is not entitled to an award of fees and costs under § 1190(B)(1). MP Holding argues that in order to prevent a result demonstrably at odds with the intent of Legislature, the term garnishee should be construed to include judgment debtors who defend a garnishee. MP Holding points to 12 O.S.2001 §§ 1181–1182, which provide that a judgment debtor may defend the garnishee on any ground upon which the garnishee might defend itself,[33] and that the judgment debtor and the garnishee are collectively viewed as parties defendant to a garnishment action.[34]

¶ 29 It must first be stated that the facts of this cause are extraordinarily unusual. It is rare that a judgment creditor seeks to enforce a judgment against a successor corporation once-removed; it is rarer still that a judgment debtor takes up the defense of a garnishee in a garnishment proceeding. Perhaps rarest of all is a request for an award of attorney fees and costs made by a putative judgment debtor which has successfully defended a garnishee in a garnishment proceeding. The conflagration of these legal oddities in a single cause serves to reinforce the principle that, in the law, the actual is always stranger than the hypothetical.[35]

¶ 30 Section § 1190(B)(1) is not ambiguous; therefore, we need not employ rules of statutory interpretation.[36] The provision plainly provides that in a trial of a garnishment action, either the prevailing judgment creditor or the prevailing garnishee is entitled to

---

**29.** *Stump v. Cheek,* see note 24, supra; *Boston Avenue Mgmt., Inc. v. Associated Res., Inc.,* see note 27, supra; *Head v. McCracken,* see note 24, supra.

**30.** *Edmondson v. Pearce,* 2004 OK 23, ¶ 69, 91 P.3d 605; *McNeill v. City of Tulsa,* 1998 OK 2, ¶ 11, 953 P.2d 329; *Ross v. Peters,* 1993 OK 8, ¶ 8, 846 P.2d 1107.

**31.** *Stump v. Cheek,* see note 24, supra at ¶ 14; *Ross v. Peters,* see note 30, supra; *Thornton v. Woodson,* 1977 OK 185, ¶ 10, 570 P.2d 340.

**32.** Title 12 O.S. Supp.2002 § 1190(B)(1), see note 23, supra. More generally, 12 O.S. Supp. 2002 § 1190(C) provides:

In all other cases under this article not expressly provided for, the court may, in its discretion, award costs in favor of or against any party.

**33.** Title 12 O.S.2001 § 1181 provides:

At any time before final order or judgment against the garnishee, the defendant may in all cases, by answer duly verified defend the proceedings against any garnishee, upon the ground that the indebtedness of the garnishee, or any property held by him, is exempt from execution against such defendant, or for any other reason is not liable to garnishment; or upon any ground upon which a garnishee might defend the same; and may participate in the trial of any issue between the plaintiff and garnishee for the protection of his interests. The garnishee may at his option, defend the principal action for the defendant, if the latter does not, but shall be under no obligations so to do.

**34.** Title 12 O.S.2001 § 1182 provides in pertinent part:

The proceedings against a garnishee shall be deemed an action by the judgment creditor against garnishee and defendant, as parties defendant, and all of the provisions for enforcing judgment shall be applicable thereto....

**35.** Lord Byron, *Don Juan,* Canto XIV, stanza 50 (1823):

'Tis strange—but true; for truth is always strange;
Stranger than fiction;

**36.** *Estes v. ConocoPhillips Co.,* 2008 OK 21, ¶ 16, 184 P.3d 518; *Strong v. State ex rel. Okla. Police Pension & Retirement Bd.,* 2005 OK 45, ¶ 8, 115 P.3d 889; *King v. King,* 2005 OK 4, ¶ 22, 107 P.3d 570.

an award of attorney fees and costs.[37] Because we so narrowly define exceptions to the American Rule, we cannot reach beyond the plain language of § 1190(B)(1) to allow a putative judgment debtor to recover attorney fees.

¶ 31 Crutchfield had obtained a judgment against MP Engine, and sought, in good faith, to enforce it against a customer of a corporation he thought was a liable successor to MP Engine. To extend the plain language of § 1190(B)(1) to include a prevailing putative judgment debtor would be to inequitably sanction Crutchfield for bringing a good faith garnishment action on a close question. We hold that Tige, as prevailing garnishee, is entitled to an award of reasonable attorney's fees and costs incurred at trial, but MP Holding, as putative judgment debtor, is not.

¶ 32 In a separate portion of their Brief–in–Chief, MP Holding and Tige requested an award of appeal-related attorney fees based on § 1190(B)(1).[38] Appeal-related attorney fees are recoverable if statutory authority exists for their award in the trial court.[39] As stated above, § 1190(B)(1) mandates an award of reasonable attorney's fees to a prevailing garnishee in a trial of a garnishment action. Tige is entitled to an award of reasonable appeal-related attorney's fees, but MP Holding is not.

## CONCLUSION

¶ 33 To determine the liability of a once-removed successor corporation, a court must make a finding that each company along the line of succession met an exception to non-liability set forth in *Pulis v. United States Elec. Tool Co.*, 1977 OK 36, ¶ 5, 561 P.2d 68.[40] Crutchfield alleged only the mere continuation *Pulis* exception was applicable. When determining whether a successor corporation is liable for the debts of a seller corporation under the mere continuation exception, a court must look to whether there is a continuation of the corporate entity rather than a continuation of business operations. The trial court erred by emphasizing the continua-

---

**37.** Of the few states that have similar provisions awarding fees and costs to the prevailing party in a trial on garnishment, our research has not uncovered a single case in which a putative judgment debtor who defended its garnishee was awarded fees and costs. *See* Ariz.Rev.Stat. Ann. §§ 12–1580(E), 1591(A) (2009)(trial court may award prevailing party in a garnishment action fees and costs, but no fees may be awarded against the judgment debtor, and if the garnishee is discharged upon answering, costs shall be taxed against the judgment creditor); Nev.Rev. Stat. § 31.340 (2009)(if the plaintiff recovers less than or equal to the amount in the garnishee's answer, the garnishee shall be awarded fees and costs, otherwise, the plaintiff shall be awarded fees and costs); N.M. Stat. Ann. § 35–12–16 (2009)(A prevailing plaintiff in a garnishment action may be awarded fees and costs. If a garnishee answers, he is entitled to an award of fees and costs from plaintiff or debtor, whichever is the non-prevailing party.); S.D. Codified Laws § 21–18–49 (2009)(in a trial on garnishment, if the plaintiff recovers more than the garnishee admits in its answer, the plaintiff shall be awarded costs from the garnishee, otherwise, the garnishee shall be awarded costs from the plaintiff); Texas R. Civ. P. 677 (2009)(If the garnishee is discharged upon answering, costs are taxed to the plaintiff. If the garnishee's answer is not controverted, the garnishee's costs are taxed to the defendant. If the answer is contested, costs shall abide the issue of the contest.); Wash. Rev. Code Ann. § 6.27.230 (2009)(when a garnishee's answer is controverted, costs shall be awarded to the prevailing party, but no costs may be awarded against the defendant if the plaintiff controverts the answer).

**38.** *See* 12 O.S.2001 § 696.4(C); Rule 1.14(b), Supreme Court Rules, 12 O.S.2001, App. 1. MP Holding and Tige also requested an award of appeal-related costs. Rule 1.14(a), Supreme Court Rules, 12 O.S.2001, App. 1 provides:

> Costs must be sought by a separately filed and labeled motion in the appellate court prior to mandate. The Clerk shall not tax as costs any expense unless the person claiming the same, prior to the issuance of a mandate in the cause, shall file with the Clerk a verified statement of taxable cost items showing that person has paid the same.

MP Holding and Tige have not separately filed a motion and an attached verification.

**39.** *Stump v. Cheek,* see note 24, supra at ¶ 22 fn. 25; *Board of Comm'rs of Muskogee County v. Lowery,* 2006 OK 31, ¶ 22, 136 P.3d 639; *Casey v. Casey,* 2002 OK 70, ¶ 26, 58 P.3d 763.

**40.** These exceptions are when: 1) there is an agreement to assume such debts or liabilities; 2) there is a consolidation or merger of the corporations; 3) the transaction is fraudulent in fact; or 4) the successor corporation is a mere continuation of the seller company. *Pulis v. United States Elec. Tool Co.,* see note 11, supra.

tion of business operations over continuation of the corporate entity. The evidence presented did not support a determination that Hirel was a mere continuation of the corporate entity of MP Engine. We vacate the order of the trial court denying the motion for new trial and reverse the judgment on garnishment.

¶ 34 Title 12 O.S. Supp.2002 § 1190(B)(1) does not provide for an award of attorney fees and costs to a putative judgment debtor in a trial on garnishment. As prevailing garnishee, Tige is entitled to an award of reasonable attorney fees incurred at trial and on appeal and an award of costs incurred at trial. The cause is remanded to the trial court for a determination of the amount of reasonable attorney's fees incurred at trial and on appeal and for a determination of the amount of reasonable costs incurred at trial.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT REVERSED AND CAUSE REMANDED.**

EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, WINCHESTER, COLBERT, J.J., concur.

REIF, J., disqualified.